PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.                                    No. 04-4357

NEVILLE ANDREW MEIKLE,
      *Defendant-Appellant.*

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Patrick Michael Duffy, District Judge.
(CR-03-990)

Argued: February 4, 2005

Decided: May 13, 2005

Before WIDENER and SHEDD, Circuit Judges, and
James C. CACHERIS, Senior United States District Judge
for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Shedd and Judge Cacheris concurred.

## COUNSEL

**ARGUED:** John Robert Haley, Assistant Federal Public Defender,
OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston,
South Carolina, for Appellant. Carlton R. Bourne, Jr., Assistant
United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Charleston, South Carolina, for Appellee. **ON BRIEF:**

J. Strom Thurmond, Jr., United States Attorney, Charleston, South Carolina, for Appellee.

---

**OPINION**

WIDENER, Circuit Judge:

Neville Meikle appeals his conviction in which the only claimed error is the district court's denial of his motion to suppress three kilograms of heroin that were seized following his traffic stop. Meikle argues that the district court erred in concluding that his traffic stop had become a consensual encounter by the time he consented to the search of his vehicle. We affirm.

I.

On the afternoon of September 24, 2003, Lance Corporal Brown observed Neville Meikle driving north on Interstate 95, crossing the white fog line and drifting onto the shoulder of the highway several times. Corporal Brown initiated a traffic stop of Meikle's vehicle for the weaving violation. When Brown approached Meikle's vehicle and asked for a copy of Meikle's driver's license and registration, Corporal Brown observed that Meikle was extremely nervous; Meikle's arm was shaking and he stuttered in his speech.

In response to a question about Meikle's nervousness, Meikle told Corporal Brown that he was driving from Miami to Baltimore, Maryland for a job interview with Thrift Trucking. Brown then asked Meikle to step out of the vehicle while he continued to question Meikle about the job interview. Corporal Brown asked Meikle if Thrift Trucking had offices in Florida and Meikle replied "yes, not really." Meikle went on to state that if you lived north of Interstate 4 you had to interview in Baltimore. Brown was somewhat familiar with Florida highways and found this to be inconsistent with the fact that Meikle said he lived in Miami, south of Interstate 4.

Corporal Brown then radioed the dispatcher to inquire as to the status of Meikle's driver's license. While Brown awaited the dispatch-

er's response, he again questioned Meikle about his job and interview and whether there were any illegal items in his vehicle. Corporal Brown noted that Meikle's overall nervousness was increasing and that Meikle laughed nervously when he said he had no illegal items. The officer found Meikle's nervousness to be extreme, especially considering that midway through the encounter Corporal Brown had told Meikle that he was only giving Meikle a warning for crossing the fog line.

After Corporal Brown completed the warning citation and Brown's dispatch advised Brown that Meikle's driver's license was clear, Corporal Brown returned Meikle's license and registration and shook his hand. At this point, 11 minutes had passed since the original stop and Corporal Brown testified that Meikle was free to leave.

As Meikle turned and walked back towards his vehicle, Corporal Brown asked Meikle if he could talk to him again and Meikle replied "yes". Corporal Brown then asked Meikle if there were any illegal drugs in the vehicle. Meikle nervously stuttered "no." Corporal Brown next asked if he could search Meikle's vehicle, and Meikle consented. Corporal Brown called for another officer and with the assistance of a drug dog, they searched Meikle's vehicle and found several packages containing approximately three kilograms of heroin.

On October 15, 2003, Meikle was indicted in the District Court for the District of South Carolina, Charleston Division, for possession with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). The defendant filed a motion to suppress the evidence seized from his vehicle and a hearing was held. In a January 7, 2004 order, the district court denied Meikle's motion and Meikle entered a conditional plea of guilty, reserving his right to challenge the district court's ruling. The defendant was sentenced to 240 months' imprisonment.

## II.

The defendant argues on appeal that the traffic stop had not become a consensual encounter at the time that he consented to the search of his vehicle because the traffic stop violated *Terry v. Ohio*, 392 U.S. 1 (1968) by going beyond the limits of proper law enforce-

ment conduct in a routine traffic stop. We review under the clearly erroneous standard the factual finding in the district court's denial of the defendant's motion to suppress but review the legal determinations *de novo*. *United States v. Rusher*, 966 F.2d 868, 873 (4th Cir. 1992).

The Supreme Court's analysis in *Terry* governs routine traffic stops, such as the one at issue here. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). To determine the limits of police conduct, *Terry* employs a dual inquiry: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20.

However, if the traffic stop becomes a consensual encounter, the *Terry* inquiry would not be employed, and the stop would instead be governed by the Supreme Court's analysis in *Florida v. Bostick*, 501 U.S. 429 (1991), because a consensual encounter does not "trigger Fourth Amendment scrutiny." *Bostick*, 501 U.S. at 434 (citing *Terry*, 392 U.S. at 19). Under *Bostick*, the question is "whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 U.S. at 439; *United States v. Rusher*, 966 F.2d 868, 877 (4th Cir. 1992). This inquiry involves an objective analysis of the totality of circumstances. *United States v. Weaver*, 282 F.3d 302, 309-10 (4th Cir. 2002). If a reasonable person would have felt free to decline the officer's request or otherwise terminate the encounter, and the suspect freely gives consent to search at this point, there is no need to reach the issue of whether the initial stop was permissible under *Terry*. *Rusher*, 966 F.2d at 877.

Employing the *Bostick* inquiry, the district court determined that Meikle's traffic stop had become a consensual encounter when Meikle freely granted consent for Corporal Brown to search his vehicle. Thus, the court concluded that it need not address whether the initial stop exceeded the permissible scope of a *Terry* stop. *United States v. Meikle*, C.A. No. 2:03-990 (D.S.C. Jan. 7, 2004) (order denying motion to suppress evidence)(J.A. 128). We agree with the district court's reasoning and disposition of this case. We are of opinion that this encounter was consensual because under *Bostick*, Meikle, as a

reasonable person, would have felt free to decline Corporal Brown's requests to continue the encounter.

In the instant case, a total of eleven minutes passed between the initial stop and when Corporal Brown finished issuing the warning citation, returned Meikle's license and registration and shook Meikle's hand. Corporal Brown testified that at that point Meikle was free to go, and in fact, Meikle did turn and walk away. Several seconds passed before Corporal Brown said "Mr. Meikle, can I speak with you." Meikle agreed to speak with Corporal Brown further, and during this conversation, Meikle also consented to the search of his vehicle.

Since *Bostick*, we have held that "[c]ircumstances where the citizen would feel free to go, but stays and has a dialogue with the officer, are considered consensual." *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002). Also, "[w]hen a stop is over and its purpose served . . . mere questioning by officers without some indicated restraint, does not amount [to] . . . a seizure under the Fourth Amendment." *United States v. Sullivan*, 138 F.3d 126, 131 (4th Cir. 1998)(holding that a search was consensual even though an officer repeatedly asked questions about the presence of illegal items in the car, after returning a suspect's license at the conclusion of a traffic stop). Following the reasoning of these cases, in which we have repeatedly found to be consensual encounters similar to the one at hand, Meikle's traffic stop had become consensual by the time he consented to the search of his vehicle. The officer had returned Meikle's license and registration, had shaken Meikle's hand, and Meikle began walking back to his car. It was clear that Meikle was free to go. A reasonable person would have felt free to decline Corporal Brown's request to speak to Meikle further. Therefore, a consensual encounter commenced the moment the officer asked if he could speak to Meikle again and Meikle agreed.

The traffic stop at issue is also remarkably similar to that in *United States v. Rusher*, 966 F.2d 868 (4th Cir. 1992). In *Rusher*, the defendant's vehicle was stopped for a seatbelt violation and improper license plate. The officer asked the defendant about his vehicle and trip before issuing a warning ticket and returning the defendant's driver's license. The officer then told the defendant that he was "free to

go." *Rusher*, 966 F.2d at 872. As in the case at hand, only after the driver's papers had been returned and it was made clear that the driver could leave, did the officer ask if he could search the vehicle. And, as in the case at hand, the driver consented and illegal items were found in the vehicle. *Rusher*, 966 F.2d at 872-73.

In *Rusher*, this court held that it did not need to determine whether the stop exceeded the proper scope of a *Terry* stop because the encounter in which the defendant consented to the search of his vehicle was a consensual encounter. *Rusher*, 966 F.2d at 877. The court said that the encounter became consensual once the officer told the defendant he was free to go, and this before asking permission to search the vehicle. Thus, the defendant "did not need to answer any of the trooper's questions." *Rusher*, 966 F.2d at 877.

Miekle's situation is indistinguishable from that in *Rusher*. As in *Rusher*, and pursuant to the inquiry laid out in *Bostick*, the encounter between the defendant and the officer was purely consensual. Meikle understood that he was free to leave, which is made obvious by the fact that he shook hands with the officer and did in fact begin to leave. The officer had also returned all of Meikle's papers, which also signified that Meikle could go. The holding of the district court that the search was consensual is thus affirmed.

We add one item to our discussion in this opinion. The district court heard the testimony of Corporal Brown *ore tenus* in open court. The judge saw the witness and heard him testify. That adds considerable force to the fact finding of the district court in this case.

The judgment of the district court is accordingly

*AFFIRMED*.