**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 08-4284**

—————————

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

ALBERTO GALLARDO-GONZALEZ, a/k/a Kidnay L. Torres,

                Defendant - Appellant.

—————————

Appeal from the United States District Court for the Western District of North Carolina, at Statesville.   Richard L. Voorhees, District Judge.   (5:06-cr-00050-RLV-CH-1)

—————————

Submitted:  March 31, 2009          Decided:  May 22, 2009

—————————

Before MOTZ and TRAXLER, Circuit Judges, and HAMILTON, Senior Circuit Judge.

—————————

Affirmed by unpublished per curiam opinion.

—————————

Richard A. Culler, CULLER & CULLER, P.A., Charlotte, North Carolina, for Appellant.  Gretchen C. F. Shappert, United States Attorney, Mark A. Jones, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

—————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Alberto Gallardo-Gonzalez was charged with possession with intent to distribute at least 500 grams of cocaine and reentry by an illegal alien. After the district court denied his motion to suppress evidence seized during a traffic stop, Gallardo-Gonzalez pled guilty to both charges, reserving his right to challenge the propriety of the court's suppression ruling on appeal. We affirm.

This court reviews the factual findings underlying the denial of a motion to suppress for clear error, and the legal conclusions de novo. United States v. Wilson, 484 F.3d 267, 280 (4th Cir. 2007). When evaluating the denial of a suppression motion, we view the evidence in the light most favorable to the Government, the prevailing party. United State v. Uzenski, 434 F.3d 690, 704 (4th Cir. 2006).

Sergeant Gary Simpson testified that he stopped Gallardo-Gonzalez's minivan after witnessing two traffic infractions. First, information on the vehicle's thirty-day tag was obstructed by a black tag frame, preventing Simpson from reading both the tag's expiration date and its vehicle identification number. Second, Simpson observed the van jerk suddenly to the right, across the fog line, and then move back onto the highway. Gallardo-Gonzalez maintains that the traffic stop was based on Simpson's mistaken understanding of applicable

North Carolina statutes and that these mistakes of law rendered the stop unreasonable.  We disagree.

North Carolina law prohibits the covering or partial covering of any portion of a registration plate, or the figures or letters thereon.  N.C. Gen. Stat. § 20-63(g) (2007). Gallardo-Gonzalez maintains that the statute applies only to permanent tags, and not to temporary plates such as those on his vehicle.  This argument is defeated by N.C. Gen. Stat. § 20-79.1(k) (2007), which states, "The provisions of [§] 20-63 . . . shall apply in like manner to temporary registration plates or markers as is applicable to nontemporary plates."

State law also requires drivers to maintain the lane of travel.  N.C. Gen. Stat. § 20-146(d) (2007).  Contrary to Gallardo-Gonzalez's contention, the statute does not require that the driver be reckless in order for there to be probable cause to stop the vehicle.  Rather, because Gallardo-Gonzalez's traffic violation was "readily observable," there was probable cause for the stop.  See State v. Baublitz, 616 S.E.2d 615, 619 (N.C. Ct. App. 2005) ("observation of defendant's vehicle twice crossing the center line furnished . . . probable cause to stop defendant's vehicle for a violation of . . . § 20-146(a)"); State v. Barnhill, 601 S.E.2d 215, 217 (N.C. Ct. App. 2004).

A routine traffic stop permits an officer to detain the motorist to request a driver's license and vehicle

3

registration, to run a computer check, and to issue a citation. United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008), cert. denied, 129 S. Ct. 943 (2009).  To further detain the driver for questioning requires either the driver's consent or reasonable suspicion on the officer's part that criminal activity is afoot.  Id. at 336.  In assessing the voluntariness of consent, courts consider the totality of the circumstances to determine "whether the police conduct would have communicated to a reasonable person that he was not free to decline the officers' request or otherwise terminate the encounter." United States v. Meikle, 407 F.3d 670, 672 (4th Cir. 2005); see Florida v. Bostick, 501 U.S. 429, 439 (1991).  A district court's finding that consent was voluntary will be upheld unless it is clearly erroneous.  United States v. Rusher, 966 F.2d 868, 877 (4th Cir. 1992).

Here, following the traffic stop, Gallardo-Gonzalez provided Simpson with a license in the name of Kidnay Torres. He sat next to Simpson in the police car while Simpson ran a routine license check.  Initial computer checks turned up nothing amiss.  Simpson drafted a warning ticket and informed Gallardo-Gonzalez that he was free to go.  Gallardo-Gonzalez could have left at any time because the passenger door was not locked; however, he agreed to talk to Simpson for a few minutes.

4

Simpson asked whether he could search the minivan, and Gallardo-Gonzalez refused. Simpson then asked whether he could run his name through BLOCK, an ICE database. Gallardo-Gonzalez agreed. Simpson requested a K-9 unit and called the BLOCK operator. The K-9 officer promptly arrived, but the dog did not alert when it walked around Gallardo-Gonzalez's vehicle. The BLOCK operator informed Simpson that "Kidnay Torres" was an alias used by Gallardo-Gonzalez and that he had a criminal record, including a conviction for a cocaine offense. When he heard Simpson repeat the name Gallardo-Gonzalez, the defendant slumped over and acknowledged that this was his real name. Simpson informed him that he could be arrested for giving a fictitious name to a law enforcement officer, and again requested consent to search the minivan. This time, Gallardo-Gonzalez agreed to the search. Within minutes, a bag containing two kilograms of cocaine was discovered under the vehicle's passenger seat.

We conclude that the district court did not clearly err in finding Gallardo-Gonzalez's consent to be voluntary. The entire incident--from the actual stop to the discovery of the cocaine--lasted approximately twenty minutes. Gallardo-Gonzalez was free to leave rather than stay and engage in a discussion with Simpson. As the district court found, Simpson was deferential when dealing with Gallardo-Gonzalez.

5

We therefore affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the material before us and argument would not aid the decisional process.

AFFIRMED