STATE OF NORTH CAROLINA v. ALVIN LEWIS KINCAID, SR.

No. COA00-1210

(Filed 6 November 2001)

## 1. Search and Seizure— traffic stop—suspicion of revoked license—reasonable

The trial court did not err by refusing to suppress marijuana seized from a vehicle where defendant contended that the seizure was the result of an illegal stop. The officer testified that he understood that defendant's license had been revoked, that he had never seen defendant drive an automobile in the two or three years he had known him, and that defendant had attempted to conceal his identity when he saw the officer. Although the officer's suspicion that defendant had a revoked license was incorrect, he had a reasonable suspicion based on articulated and specific facts. Under this combination of circumstances, the stop was legal.

## 2. Search and Seizure— traffic stop—initial grounds no longer valid—voluntary additional questioning—no coercive action

The trial court did not err by refusing to suppress marijuana seized after a traffic stop which was based upon suspicion of driving with a revoked license where defendant contended that the officer no longer had grounds to detain defendant after the officer returned defendant's license and registration. While it is true that the initial reasonable suspicion evaporated, the officer was neither prohibited from asking if defendant would consent to additional questioning nor prohibited from questioning defendant after receiving his consent. There was no coercive action by the officer; he was the only officer present, he spoke to defendant in

a regular tone of voice, even addressing him on a first-name basis, and defendant had been allowed to enter a near-by convenience store and buy a soft drink during the license check.

### 3. Search and Seizure— Fourth Amendment seizure—consensual encounter—volunteered information

There was no Fourth Amendment seizure where an officer recognized defendant, stopped him on suspicion of driving with a revoked license, asked defendant if he could ask some questions after defendant's license proved valid, and defendant volunteered that there was marijuana in the car upon being asked for consent to a search of the car. There was only a consensual encounter from the time defendant consented to additional questioning until the officer began searching the car, and the volunteered information gave the officer probable cause to search the vehicle.

### 4. Confessions and Incriminating Statements—traffic stop—marijuana in car—volunteered statement

There was no error in the trial court's refusal to suppress marijuana seized from a car after a traffic stop based on the failure to advise defendant of his Miranda rights where defendant was free to leave and the officer was simply conducting a consensual questioning. Defendant knowingly volunteered his statements.

Appeal by defendant from judgment dated 27 March 2000 by Judge Dennis J. Winner in Superior Court, Buncombe County. Heard in the Court of Appeals 12 September 2001.

*Attorney General Roy Cooper, by Assistant Attorney General William B. Crumpler and Agency Legal Specialist Kathy Jean Moore, for the State.*

*Howard C. McGlohon for defendant-appellant.*

McGEE, Judge.

Alvin Lewis Kincaid, Sr. (defendant) was indicted on 7 February 2000 for possession with intent to sell or deliver a controlled substance Schedule IV, maintaining a place to keep controlled substances, and two counts of being a habitual felon. Defendant filed a motion to suppress the evidence against him on 21 February 2000, stating he reserved the right to appeal if the motion was denied and he subsequently entered a guilty plea. At a hearing held on 20 March

2000, defendant's motion to suppress was denied. Defendant pled guilty to the charges and was sentenced to seventy to ninety-three months in prison. Defendant appeals from the denial of his motion to suppress.

The State presented as evidence the testimony of Sergeant Timothy B. Splain of the Asheville Police Department, the arresting officer, and his written statement prepared the night of defendant's arrest. This evidence tended to show that Sergeant Splain was driving on Montford Avenue in Asheville, North Carolina on 17 September 1999, when defendant drove past him. When defendant passed Sergeant Splain, defendant quickly looked away and raised his hand in an apparent attempt to conceal his face. Sergeant Splain testified he knew defendant's license had been revoked for two to three years. In the time Sergeant Splain had known defendant, he had seen defendant travel either as a passenger in a car or riding a moped, but never driving a car. Sergeant Splain followed defendant for a short distance. The officer stopped defendant and told him he had been stopped because Sergeant Splain suspected defendant had a revoked license. Defendant produced a license and gave it to the officer. Sergeant Splain allowed defendant to enter a convenience store while Sergeant Splain ran a check on the license. The license check showed the license was valid, and Sergeant Splain returned the license and registration to defendant.

Sergeant Splain then asked if he could question defendant concerning another matter. Defendant consented. Sergeant Splain explained that he had heard defendant routinely sold marijuana. He asked, "Alvin, I am going to ask you for consent to search your vehicle for drugs, do you have anything on you or in the car that I need to be concerned with?" Defendant looked down at the front seat and answered that there was marijuana under the front seat. Sergeant Splain retrieved a small bag containing marijuana from under the front seat of defendant's car. Sergeant Splain then radioed for a K-9 unit to search for more drugs, but defendant answered, "you don't need the dog, there is more under the other seat." After Sergeant Splain recovered more marijuana under the other seat, he placed defendant under arrest.

Defendant testified and substantiated Sergeant Splain's testimony up to the point where Sergeant Splain asked defendant if he had anything the officer should know about. Defendant testified he answered no, and that Sergeant Splain patted him down. Defendant testified that Sergeant Splain searched his vehicle without his consent,

STATE v. KINCAID

[147 N.C. App. 94 (2001)]

radioed for a K-9 unit, was told they did not have one available, and then returned and continued searching the car without defendant's consent. Defendant denies ever saying there was marijuana under the seat.

At the suppression hearing, the trial court adopted Sergeant Splain's statement in the trial court's findings of fact and made the following conclusions of law: the officer had reasonable suspicion to stop defendant, even though the suspicion proved to be wrong; although the officer never told defendant he was free to leave, under the Fourth Amendment defendant was free to leave after the officer returned the license and registration; and even though the officer did not receive consent to search the vehicle, defendant's responses gave the officer probable cause to believe a crime had been committed. Therefore, the trial court concluded the stop and search were reasonable.

I.

[1] Defendant first argues the trial court erred in denying his motion to suppress evidence because Sergeant Splain made an illegal stop of defendant's vehicle.

A "trial court's findings of fact following a suppression hearing concerning the search of the defendant's vehicle are conclusive and binding on the appellate courts when supported by competent evidence." *State v. Brooks*, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994). However, a trial court's conclusions of law regarding whether the officer had reasonable suspicion to detain a defendant is reviewable *de novo. State v. Munoz*, 141 N.C. App. 675, 682, 541 S.E.2d 218, 222, *cert. denied*, 353 N.C. 454, 548 S.E.2d 534 (2001) (citing *Brooks* at 141, 446 S.E.2d at 585).

The "Fourth Amendment's protection against 'unreasonable . . . seizures' includes seizure of the person." *California v. Hodari D.*, 499 U.S. 621, 624, 113 L. Ed. 2d 690, 696 (1991). These seizures include "brief investigatory detentions such as those involved in the stopping of a vehicle." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994). An "investigatory stop must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.' " *Id.* (quoting *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979)). To determine whether this reasonable suspicion exists, a court "must consider 'the totality of the circumstances—the whole picture.' " *Watkins* at 441, 446 S.E.2d at 70 (quot-

ing *United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981)).

> The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. The only requirement is a minimal level of objective justification, something more than an "unparticularized suspicion or hunch."

*Watkins* at 441-42, 446 S.E.2d at 70 (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989)) (other citations omitted).

In the case before us, Sergeant Splain testified that "[i]t was [his] understanding that [defendant's] licenses were revoked. And in the two or three years that [he] had known [defendant] [he] had never seen him drive an automobile." He further testified that he had only seen defendant ride in a car as a passenger or ride a moped. He also testified that defendant attempted to conceal his identity when he saw Sergeant Splain. Although the officer's suspicion turned out to be incorrect, we nonetheless hold that under this combination of circumstances, Sergeant Splain had a reasonable suspicion to stop defendant based on articulated and specific facts; therefore, the stop by Sergeant Splain was legal. We overrule this assignment of error.

II.

[2] Defendant next argues the trial court erred in dismissing his motion to suppress evidence because Sergeant Splain no longer had grounds to detain defendant after the officer returned defendant's license and registration. Defendant contends any reasonable suspicion the officer may have had evaporated after Sergeant Splain learned defendant had a valid license. He also contends he was still being detained after the officer returned the license and registration but did not tell defendant he was free to leave.

The " 'scope of the detention must be carefully tailored to its underlying justification.' " *State v. Morocco*, 99 N.C. App. 421, 427-28, 393 S.E.2d 545, 549 (1990) (quoting *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238 (1983)). In the case before us, the officer's underlying justification was to determine if defendant was driving with a valid license. His scope of detention must be tailored to ascertaining whether the license was in fact revoked. Defendant is correct in asserting the reasonable suspicion the officer had in order to stop

STATE v. KINCAID

[147 N.C. App. 94 (2001)]

defendant for a possible revoked license would not be sufficient to detain defendant any longer than necessary to dispel the officer's suspicion. However, once Sergeant Splain determined defendant had a valid license, he returned the license and registration to defendant.

Although there is no North Carolina case law which specifically states a stop is over when an officer returns a person's license and registration, there is federal case law which suggests, subject to a totality of the circumstances test, that once an officer returns the license and registration, the stop is over and the person is free to leave. In *United States v. Elliott*, 107 F.3d 810 (10th Cir. 1997), the Tenth Circuit Court of Appeals stated that our federal courts

> have consistently concluded that an officer must return a driver's documentation before a detention can end. However, . . . this is not always sufficient to demonstrate that an encounter has become consensual. . . . [T]he return of a driver's documents would not end the detention if there was evidence of a "coercive show of authority, such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled."

*Id.* at 814 (quoting *United States v. Turner*, 928 F.2d 956, 959 (10th Cir.), *cert. denied*, 502 U.S. 881, 116 L. Ed. 2d 187 (1991)). Furthermore, "the return of documentation would render a subsequent encounter consensual only if 'a reasonable person under the circumstances would believe he was free to leave or disregard the officer's request for information.'" *Elliott* at 814 (quoting *United States v. McKneely*, 6 F.3d 1447, 1451 (10th Cir. 1993)).

In the case before us, Sergeant Splain returned defendant's documentation. There is no evidence of any coercive action on the part of the officer. While defendant was being "detained," he was allowed by Sergeant Splain to enter the convenience store and buy a soft drink. Sergeant Splain was the only officer present, and he spoke to defendant in a regular tone of voice, even addressing him on a first-name basis. He asked defendant if he could question defendant about another matter, and defendant consented.

These facts are similar to *Morocco*, where after "returning to the defendant his driver's license and vehicle identification papers as well as the citation, [the officer] requested permission to search the defendant's vehicle for contraband." *Morocco* at 428, 393 S.E.2d at

549. The defendant in *Morocco* consented. Our Court then moved to the next stage of the analysis to determine whether the defendant's consent was valid or the product of coercion. Implied in *Morocco* is that the initial seizure concluded upon the return of the license. While in the case before us the trial court found defendant did not consent to the search, he did consent to additional questioning by the officer. A reasonable person, under the circumstances, would have felt free to leave when the documents were returned. Therefore, the first seizure concluded when Sergeant Splain returned the documents to defendant. While it is true the initial reasonable suspicion evaporated, Sergeant Splain was neither prohibited from simply asking if defendant would consent to additional questioning, nor was the officer prohibited from questioning defendant after receiving his consent.

[3] Next, we must determine whether there was a second Fourth Amendment seizure. Our Supreme Court has held

> police officers may approach individuals in public to ask them questions and even request consent to search their belongings, so long as a reasonable person would understand that he or she could refuse to cooperate. "A seizure does not occur simply because a police officer approaches an individual and asks a few questions." Such encounters are consensual and no reasonable suspicion is necessary. The test for determining whether a seizure has occurred is whether under the totality of the circumstances a reasonable person would feel that he was not free to decline the officer's request or otherwise terminate the encounter.

*Brooks* at 142, 446 S.E.2d at 585-86 (quoting *Florida v. Bostick*, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398 (1991)) (other citations omitted). In the case before us, Sergeant Splain asked defendant to consent to questioning, and defendant agreed. We analyze the situation under a totality of the circumstances standard. Again, the initial stop was over, and defendant did not have to agree to additional questioning. From the time when defendant consented to additional questioning until Sergeant Splain began searching the car, there was no seizure for Fourth Amendment purposes, only a consensual encounter.

Defendant relies on *State v. Falana*, 129 N.C. App. 813, 501 S.E.2d 358 (1998), which, although factually similar to the case before us, is distinguishable. In *Falana*, the officer issued a warning citation to the defendant and asked for consent to search the vehicle, but the defendant expressly refused. The defendant also did not consent to

STATE v. KINCAID

[147 N.C. App. 94 (2001)]

any additional questioning. Instead of ending the detention, the officer continued to detain the defendant while allowing a police dog to sniff the exterior of the car. Our Court determined the officer's continued detention of the defendant was an illegal seizure.

In the case before us, defendant consented to additional questioning. While defendant did not expressly consent to a search, upon being asked for consent to search, he volunteered to the officer that there was marijuana in the front seat. "A search of a vehicle on a public roadway or public vehicular area is properly conducted without a warrant as long as probable cause exists for the search." *State v. Earhart*, 134 N.C. App. 130, 133, 516 S.E.2d 883, 886 (1999). " 'Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.' " *State v. Zuniga*, 312 N.C. 251, 261, 322 S.E.2d 140, 146 (1984) (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76, 93 L. Ed. 1879, 1890 (1949)). A second seizure did occur when Sergeant Splain searched defendant's car. Although defendant did not consent to a search, consent was not needed once defendant volunteered that there was marijuana in the car. The information he volunteered led the officer to have probable cause to search the vehicle; consequently, defendant was not "illegally seized." *Morocco* at 429, 393 S.E.2d at 549. We overrule this assignment of error.

III.

**[4]** Defendant next argues the trial court erred in denying his motion to suppress based on the officer's failure to advise defendant of his *Miranda* rights before questioning him concerning a criminal offense.

"The *Miranda* warnings and waiver of counsel are required only when an individual is being subjected to custodial interrogation. 'Custodial interrogation' means questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *State v. Clay*, 297 N.C. 555, 559, 256 S.E.2d 176, 180 (1979), *rev'd on other grounds by State v. Davis*, 305 N.C. 400, 290 S.E.2d 574 (1982) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706 (1966)). In the present case, defendant had not been arrested, nor was he being arrested at the time Sergeant Splain asked if he could question defendant. Furthermore, the officer did not deprive defendant of

freedom of action in any significant way. After Sergeant Splain handed back defendant's license and registration, defendant was free to leave and free to refuse to answer questions. Sergeant Splain was simply conducting a consensual questioning. "Neither *Miranda* warnings nor waiver of counsel is required when police activity is limited to general on-the-scene investigation." *Clay* at 559, 256 S.E.2d at 180. "Ordinarily, when a suspect is not in custody at the time he is questioned, any admissions or confessions made by him are admissible so long as they are made knowingly and voluntarily." *Brooks* at 143, 446 S.E.2d at 586. Defendant knowingly volunteered his statements. We overrule this assignment of error.

No error.

Judges WALKER and HUDSON concur.