DILLON, Judge, dissenting.
Because I agree with the State that Judge Adams' findings support a conclusion that Trooper Lamm obtained Defendant's consent to search the rental vehicle after the traffic stop had concluded and Defendant was otherwise free to leave, I respectfully dissent.
Assuming, arguendo , that Trooper Lamm's exchange with Defendant following the conclusion of the traffic stop was non-consensual and that Defendant's "consent" was coerced, I believe that Trooper Lamm had reasonable suspicion of separate, independent criminal activity to support an extension of the traffic stop beyond the time necessary to complete *494 the mission of citing Defendant for the traffic violation.
I. There Was the Consensual Search After Traffic Stop Had Concluded and Defendant Was Free to Leave.
Judge Adams' findings support her conclusion that Trooper Lamm obtained Defendant's voluntary consent after Defendant was otherwise free to leave the scene.
*564 The majority contends that Defendant's consent to search the car was ineffective since Trooper Lamm impermissibly extended the traffic stop in violation of the principles set out in Rodriguez v. United States , --- U.S. ----, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015). See also Florida v. Royer , 460 U.S. 491, 507-08, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (holding that a defendant's consent to a search is ineffective to justify the search when the consent is obtained while the defendant is being illegally detained). Rodriguez is certainly an important development in Fourth Amendment law, clarifying that even a de minimis extension of a traffic stop to investigate matters unrelated to the mission of the traffic stop without reasonable suspicion of separate criminal activity is impermissible. However, this principle in Rodriguez is inapplicable here as Trooper Lamm did not extend the traffic stop to question Defendant and then search Defendant's rental vehicle. Rather, Judge Adams' findings show that Trooper Lamm concluded the traffic stop and then obtained Defendant's consent only after his exchange with Defendant evolved into a consensual encounter. For the same reasons, our case is distinguishable from our recent decision in State v. Bullock , --- N.C.App. ----, 785 S.E.2d 746 (2016), which is cited by the majority, where we applied Rodriguez to invalidate a search based on the impermissible extension of a traffic stop. Bullock did not involve a situation where a traffic stop had concluded and the encounter became consensual.
There is no detention for Fourth Amendment purposes when law enforcement engages with a defendant unless a reasonable person in the defendant's position "would have believed he was not free to leave." United States v. Mendenhall , 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). In the context of a traffic stop, the detention of a motorist is a seizure for Fourth Amendment purposes. However, when the traffic stop is over and the detainee is free to leave, the traffic stop transforms into a consensual encounter: the officer may ask questions, and the detainee can choose to answer them or simply refuse to answer and leave.
Our Court has held on a number of occasions that "[g]enerally, an initial traffic stop concludes and the encounter becomes consensual ... after an officer returns the detainee's driver's license and registration." State v. Jackson , 199 N.C.App. 236, 243, 681 S.E.2d 492, 497 (2009). See also State v. Henry , 237 N.C.App. 311, 324, 765 S.E.2d 94, 104 (2014) (recognizing that "a traffic stop is not terminated until after the officer returns the driver's license or other documents to the driver"); State v. Cottrell , 234 N.C.App. 736, 742-43, 760 S.E.2d 274, 279 (2014) (restating the general principle that the return of motorist documentation typically renders any subsequent exchanges between motorist and law enforcement consensual). In State v. Kincaid , we recognized that "subject to *565 a totality of the circumstances test, that once an officer returns the license and registration, the stop is over and the person is free to leave." 147 N.C.App. 94, 99, 555 S.E.2d 294, 298 (2001).
Likewise, the Fourth Circuit Court of Appeals has consistently held that a motorist is no longer detained after the officer gives the motorist his or her license and other paperwork, absent some other factor which might indicate restraint. See, e.g. , United States v. Sullivan , 138 F.3d 126, 133-34 (4th Cir. 1998) ; United States v. Whitney , 391 Fed.Appx. 277, 280-81 (4th Cir. 2010) ; United States v. Meikle , 407 F.3d 670, 673-74 (4th Cir. 2005).
Here, Judge Adams found that Trooper Lamm did not seek Defendant's consent to search the rental car until after returning Defendant's paperwork back to him and informing Defendant that the traffic stop had concluded. There is no finding to suggest any restraint or compulsion by Trooper Lamm when he obtained Defendant's consent to search the rental vehicle. That is, Trooper Lamm did not simply launch into an interrogation after returning to Defendant his license *495 and other paperwork. Rather, Judge Adams found that Trooper Lamm took the extra step of first asking Defendant for his consent to question him further. See Kincaid , 147 N.C.App. at 102, 555 S.E.2d at 300 (holding in a similar situation when the officer "asked if he could question defendant ... [,] [he] did not deprive defendant of freedom of action in any significant way. After [the officer] handed back defendant's license and registration, defendant was free to leave and free to refuse to answer questions"). Judge Adams also found that Trooper Lamm "was at all times casual and conversational in his words and manner."[3] See Sullivan , 138 F.3d at 133 (finding relevant that "there is no indication that [the officer] employed any physical force or engaged in any outward displays of authority"). Also significant is that the questioning occurred on a public highway during the daytime.
It is true that there is no indication (or finding) that Trooper Lamm ever told Defendant that he "was free to leave." The United States Supreme Court, however, has held that an officer is not required to inform a detainee that he is free to leave to transform a traffic stop into a consensual encounter. Ohio v. Robinette , 519 U.S. 33, 39-40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (concluding that it would "unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may *566 be deemed voluntary."). The Fourth Circuit has reached this same conclusion. Sullivan , 138 F.3d at 133 ("While [the officer] never told [the defendant] that he was free to go, that fact alone is not dispositive.") And our Court has also reached this same conclusion. Kincaid, 147 N.C.App. at 97, 555 S.E.2d at 297 (affirming the trial court's conclusion that the defendant was free to leave "although the officer never told defendant that he was free to leave").
It is also true that Judge Adams found that after Defendant gave Trooper Lamm consent to search the rental vehicle (subject to Ms. Peart's consent), Trooper Lamm asked Defendant to "sit tight" in the unlocked patrol car while he returned to the rental vehicle to ask Ms. Peart for her consent, which she gave. Given the context of Trooper Lamm's request that Defendant "sit tight," I believe that a reasonable person in Defendant's position would have still felt that he could have withdrawn his consent and terminated the encounter.[4] Trooper Lamm only "asked" Defendant to sit tight and only did so after Defendant had already given his consent and after Defendant "direct[ed] Trooper Lamm to ask Ms. Peart" for her consent.[5]
In conclusion, I believe that Defendant gave consent to search the car after the traffic stop concluded and the encounter between Defendant and Trooper Lamm became consensual. Therefore, I would affirm Judge Adams' order.
II. Trooper Lamm Otherwise Had Reasonable Suspicion to Extend the Stop.
Assuming, arguendo , that the traffic stop did not become consensual after Trooper Lamm returned all of the paperwork to Defendant, informed Defendant that the traffic stop had concluded, and asked Defendant for his consent to question him further, I believe that Judge Adams' findings support her conclusion that Trooper Lamm had reasonable suspicion that Defendant was transporting illegal drugs.
*567 The majority likens this case to our recent decision in Bullock , which applied Rodriguez and held that a traffic stop cannot be extended beyond the time necessary to complete *496 the mission of the traffic stop (issuing the citation, processing tags, reviewing driver's license information, etc.), without reasonable suspicion of some other crime being afoot. Bullock , --- N.C.App. at ----, 785 S.E.2d at 752. Admittedly, there are similarities between the facts in Bullock and Judge Adams' findings in the present case. Specifically, in Bullock , our Court determined that the defendant's presence on a busy interstate typically used for drug trafficking, the defendant's unauthorized operation of a rental vehicle,[6] the defendant's nervous behavior, and the defendant's statement that he had missed an exit to explain his erratic driving did not give rise to a "particularized suspicion of criminal activity" permitting extension of the traffic stop to conduct a frisk of the defendant. Id. at ----, 785 S.E.2d at 753-56. In reaching its conclusion, our Court relied on the Fourth Circuit's acknowledgment that:
[T]he Supreme Court has recognized that factors consistent with innocent travel can, when taken together, give rise to reasonable suspicion. On the other hand, the articulated innocent factors collectively must serve to eliminate a substantial portion of innocent travelers before the requirement of reasonable suspicion will be satisfied.
Id. at ----, 785 S.E.2d at 754 (quoting U.S. v. Digiovanni , 650 F.3d 498, 511 (4th Cir. 2011) ) (emphasis added) (internal citations and marks omitted).
Judge Adams found additional facts which, I believe, distinguish this case from Bullock . For instance, the trial court found that the following events occurred before Trooper Lamm committed any act which could arguably be related to the traffic stop:
6. Trooper Lamm observed a female in the front passenger seat holding an adult female pit bull dog and defendant in driver's seat.
7. Trooper Lamm noticed the presence of ... dog food scattered throughout the interior of the vehicle.
8. Trooper Lamm knew that the presence of a female dog and dog food are sometimes used to distract a male canine during a dog sniff.
*568 9. Trooper Lamm noticed several air fresheners which Trooper knew are sometimes used to mask the odor of a controlled substance.
Indeed, in Digiovanni , which was relied upon by our Court in Bullock , the Fourth Circuit opined that the presence of air fresheners would have had an impact on their determination that no reasonable suspicion existed to extend the stop. Digiovanni , 650 F.3d at 513. I believe that these additional findings were sufficient to "eliminate a substantial portion of innocent drivers," Bullock , --- N.C.App. at ----, 785 S.E.2d at 754, and supported the conclusion that Trooper Lamm had reasonable suspicion that criminal activity was afoot to justify an extension of the traffic stop. See State v. Warren , --- N.C.App. ----, ----, 775 S.E.2d 362, 365-66 (2015) (holding that Rodriguez was not violated and that there was reasonable suspicion to conduct a dog sniff search).

Defendant challenges the finding regarding the casualness of the conversation; however, he does not challenge this finding with regards to any portion of the encounter occurring after Trooper Lamm informed Defendant that the traffic stop was completed.

By this point, another officer was on the scene who remained with Defendant while Trooper Lamm sought Ms. Peart's consent to search the vehicle. Defendant could have simply told this other officer that he was withdrawing his consent and that he was going to leave.

Defendant does not make any argument concerning whether Ms. Peart would not have felt free to leave when she gave her consent to search the vehicle or any argument about the impact the validity of Ms. Peart's consent should have on our analysis in this prosecution of Defendant. Therefore, any issue concerning Ms. Peart's consent is not before us.

The rental agreement in the present case only allowed the vehicle to be driven in New York, New Jersey, and Connecticut.