IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-33-2

 Filed: 16 January 2018

Johnston County, No. 14 CRS 54773, 14 CRS 54776

STATE OF NORTH CAROLINA

 v.

DAVID MICHAEL REED, Defendant.

 Appeal by Defendant from judgment entered 20 July 2015 by Judge Thomas

H. Lock in Johnston County Superior Court. Originally heard in the Court of Appeals

6 June 2016. By opinion issued 20 September 2016, a divided panel of this Court

reversed the decision of the trial court denying Defendant’s motion to suppress

evidence. Upon discretionary review granted by the Supreme Court and by judgment

dated 27 November 2017, the Supreme Court of North Carolina vacated and

remanded the case to the Court of Appeals for reconsideration in light of the Supreme

Court’s decision in State v. Bullock, ___, N.C. ___, ___ S.E.2d ___ (2017) (194A16).

 Attorney General Roy Cooper, by Special Deputy Attorney General E. Burke
 Haywood, for the State.

 Patterson Harkavy LLP, by Paul E. Smith, for Defendant-Appellant.

 HUNTER, JR., Robert N., Judge.

 David Michael Reed (“Defendant”) filed a motion to suppress evidence found

during a traffic stop. On 14 July 2015, the trial court entered an order denying
 STATE V. REED

 Opinion of the Court

Defendant’s motion to suppress. On 21 July 2015, Defendant pleaded guilty to

trafficking more than 200 grams but less than 400 grams of cocaine by transportation,

and trafficking more than 200 grams but less than 400 grams of cocaine by

possession. The trial court sentenced Defendant to 70 to 93 months imprisonment

and imposed a $100,000.00 fine and $3,494.50 in court costs. On appeal, this Court

held the trial court committed reversible error by denying Defendant’s motion to

suppress.

 On 5 October 2016, the State filed a petition for writ of supersedeas and a

motion for temporary stay with the Supreme Court of North Carolina. The same day,

the Supreme Court allowed the State’s motion for temporary stay. On 25 October

2016, the State filed notice of appeal, pursuant to the dissenting opinion. On 2

November 2016, the court allowed Defendant’s petition for writ of supersedeas. In an

opinion filed 3 November 2017, the court vacated the opinion of this Court and

remanded for reconsideration in light of the Supreme Court’s recent decision in State

v. Bullock, ___ N.C. ___, ___ S.E.2d ___ (2017) (194A16). On remand, after reviewing

Bullock and the arguments advanced by the parties, we reverse the decision of the

trial court.

 I. Factual and Procedural Background

 At 8:18 a.m. on 9 September 2014, Defendant drove a rented Nissan Altima

faster than the posted sixty-five miles per hour speed limit on Interstate 95 (“I-95”)

 -2-
 STATE V. REED

 Opinion of the Court

in Johnston County, North Carolina. His fiancée, Usha Peart, rode in the front

passenger seat and held a female pit bull in her lap. Trooper John W. Lamm, of the

North Carolina State Highway Patrol, was parked in the median of I-95. Trooper

Lamm used his radar to determine Defendant was traveling seventy-eight miles per

hour, and performed a traffic stop for Defendant’s speeding infraction. Trooper

Lamm’s patrol car had a camera that faced forwards towards the hood of the vehicle,

and recorded audio inside and outside of the patrol car.

 Defendant pulled over on the right shoulder of I-95, Trooper Lamm pulled

behind him, and Trooper Lamm approached the passenger side of the Nissan.

Trooper Lamm saw energy drinks, trash, air fresheners, and dog food scattered on

the floor of the vehicle. He asked if the dog in Peart’s lap was friendly and Defendant

and Peart said the dog was friendly.

 Trooper Lamm stuck his arm inside the vehicle to pet the dog and asked

Defendant for his driver’s license and the rental agreement. Defendant gave Trooper

Lamm his New York driver’s license, a registration card, and an Enterprise rental

car agreement. The rental agreement listed Peart as the renter and Defendant as an

authorized driver. Trooper Lamm told Defendant “come on back here with me”

motioning towards his patrol car.

 Defendant exited the Nissan and Trooper Lamm asked if he had any guns or

knives on his person. Defendant asked Trooper Lamm why the frisk was necessary,

 -3-
 STATE V. REED

 Opinion of the Court

and Trooper Lamm replied, “I’m just going to pat you down for weapons because

you’re going to have a seat with me in the car.” Trooper Lamm found a pocket knife,

said it was “no big deal,” and put it on the hood of the Nissan.

 Trooper Lamm opened the passenger door of his patrol car. His K-9 was in the

back seat of the patrol car at that time. Defendant sat in the front passenger seat

with the door open and one leg outside of the car. Trooper Lamm told Defendant to

close the door. Defendant hesitated and said he was “scared” to close the door; Lamm

replied, “Shut the door. I’m not asking you, I’m telling you to shut the door. I mean

you’re not trapped, the door [is] unlocked. Last time I checked we were the good

guys.” Defendant said, “I’m not saying you’re not,” and Trooper Lamm said, “You

don’t know me, don’t judge me.” Defendant said he was stopped before in North

Carolina, but he was never taken to the front passenger seat of a patrol car during a

stop. Following Trooper Lamm’s orders, Defendant closed the front passenger door.

 Trooper Lamm ran Defendant’s New York license through record checks on his

mobile computer. While doing so, Trooper Lamm asked Defendant about New York,

and “where are y’all heading to?” Defendant said he was visiting family in

Fayetteville, North Carolina. Trooper Lamm noted the rental agreement restricted

travel to New York, New Jersey, and Connecticut, but told Defendant the matter

could likely be resolved with a phone call to the rental company.

 -4-
 STATE V. REED

 Opinion of the Court

 Then, Trooper Lamm asked Defendant about his criminal history. Defendant

admitted he was arrested for robbery in the past, when he was in the military.

Trooper Lamm asked Defendant about his living arrangements with Peart, and

whether he or Peart owned the dog in the Nissan. Trooper Lamm noticed the rental

agreement was drafted for a Kia Rio not a Nissan Altima. Trooper Lamm exited the

patrol car to ask Peart for the correct rental agreement, and told Defendant to “sit

tight.”

 Trooper Lamm approached the front passenger side of the Nissan Altima and

asked Peart for the correct rental agreement. He asked about her travel plans with

Defendant and the nature of their trip. She said they were visiting family in

Fayetteville but might also travel to Tennessee or Georgia. She explained the first

rental car they had, the Kia Rio, was struck by another car and the rental company

gave them the Nissan Altima as a replacement. She could not find the rental

agreement for the Nissan Altima and continued to look for it. Trooper Lamm told

Peart he was going to issue Defendant a speeding ticket and the two would “be on

[their] way.”

 Trooper Lamm returned to the patrol car, explained Peart could not locate the

correct rental agreement, and continued to question Defendant about the purpose of

the trip to Fayetteville. Then, Trooper Lamm called the rental company and the

rental company confirmed everything was fine with the Nissan Altima rental, but

 -5-
 STATE V. REED

 Opinion of the Court

informed Trooper Lamm that Peart still needed to call the company to correct the

restricted travel condition concerning use of the car in New York, New Jersey, and

Connecticut. After the call, Trooper Lamm told Defendant his driver’s license was

okay and he was going to receive a warning ticket for speeding. Trooper Lamm issued

a warning ticket, returned all of Defendant’s paperwork including his license and

asked Defendant if he had any questions.

 Then, Trooper Lamm told Defendant he was “completely done with the traffic

stop,” but wanted to ask Defendant additional questions. Defendant did not make an

audible response, but at the suppressing hearing, Trooper Lamm testified Defendant

nodded his head. Trooper Lamm did not tell Defendant he was free to leave. At this

point, an additional officer, Trooper Ellerbe, was present on the scene. Trooper

Ellerbe parked his patrol car behind Trooper Lamm’s and left his blue lights on. He

stood directly beside the passenger door of Trooper Lamm’s vehicle where Defendant

sat.

 Trooper Lamm asked Defendant if he was carrying a number of controlled

substances, firearms, or illegal cigarettes in the Nissan Altima. Defendant

responded, “No liquor, no nothing, you can break the car down.” Trooper Lamm

continued questioning Defendant and said, “I want to search your car, is that okay

with you?” Defendant hesitated, mumbled, and told Trooper Lamm to ask Peart.

Defendant stated, “I’m just saying, I’ve got to go to the bathroom, I want to smoke a

 -6-
 STATE V. REED

 Opinion of the Court

cigarette, we’re real close to getting to the hotel so that we can see our family, like, I

don’t, I don’t see a reason why.” Trooper Lamm responded, “[W]ell let me go talk to

her then, sit tight,” and walked to the front passenger side of the Nissan Altima. By

this time, two additional officers were present at the scene.

 Trooper Lamm told Peart everything was fine with the rental agreement and

asked her the same series of questions he asked Defendant, whether the two were

carrying controlled substances, firearms, or illegal cigarettes. Trooper Lamm asked

Peart if he could search the car. Peart hesitated, expressed confusion, and stated,

“No. There’s nothing in my car, I mean . . . .” Trooper Lamm continued to ask for

consent, Peart acquiesced and agreed to sign a written consent form. Trooper Lamm

searched the Nissan Altima and found cocaine under the back passenger seat.

 II. Analysis

 Defendant originally argued before this Court the trial court erred in denying

his motion to suppress evidence discovered pursuant to an unlawful traffic stop.

Specifically, Defendant argued the trial court made findings of fact which were not

supported by competent evidence because his “initial investigatory detention was not

properly tailored to address a speeding violation.” He also contended Trooper Lamm

seized him without reasonable suspicion of criminal activity, when the trooper told

him to exit his vehicle and sit in the patrol car. Defendant further argued the officer

 -7-
 STATE V. REED

 Opinion of the Court

unlawfully seized items from the car during the search, and these items are fruit of

the poisonous tree, which must be suppressed. This Court agreed.

 Relying on the United States Supreme Court’s guidance in Rodriguez v. United

States and our prior decision in State v. Bullock we held:

 [A]n officer may offend the Fourth Amendment if he
 unlawfully extends a traffic stop by asking a driver to step
 out of a vehicle. The same is true of an officer who
 unlawfully extends a traffic stop by asking a driver to sit
 in his patrol car, thereby creating the need for a weapons
 pat down. It is also possible for an officer to unlawfully
 extend a traffic stop by telling a driver to close the patrol
 car's front passenger door, while the officer questions the
 driver about matters unrelated to the traffic stop.

State v. Reed, ___ N.C. App. ___, ___, 791 S.E.2d 486, 492 (2016) (citations and

footnotes omitted). We determined the trooper’s authority to seize Defendant for

speeding ended “when tasks tied to the traffic infraction [were]—or reasonably should

have been—completed.” Id. (quoting Rodriguez v. United States, ___ U.S. ___, ___,

191 L. Ed. 2d 492, 498 (2015) (emphasis added) (citation omitted)). We determined

at the very latest, the authority to seize ended when the officer told Defendant he was

going to issue a warning ticket, and gave him a copy of the ticket. Id.

 We ultimately held Trooper Lamm did not have reasonable suspicion to search

the vehicle after the traffic stop concluded, because the evidence the trial court relied

upon in support of a finding of reasonable suspicion constituted legal behavior,

consistent with innocent travel. Id. at ___, 791 S.E.2d at 493. Therefore, we reversed

 -8-
 STATE V. REED

 Opinion of the Court

the decision of the trial court denying Defendant’s motion to suppress. Id.

 In State v. Bullock, our Supreme Court addressed a similar factual scenario.

There, the Supreme Court held an officer may require a driver to exit his vehicle,

without unlawfully extending the traffic stop. ___ N.C. ___, ___, ___ S.E.2d ___, ___

(Nov. 3, 2017) (No. 194A16). In Bullock, after the officer required the driver to exit

his vehicle, he frisked the driver for weapons. Id. The Supreme Court held this frisk

was lawful, due to concerns of officer safety, and the very brief duration of the frisk.

Id. The officer then required the driver to sit in the patrol car, while he ran database

checks. Id. The court determined this did not unlawfully extend the stop either. Id.

The court then held the officer had reasonable suspicion to thereafter extend the stop

and search the defendant’s vehicle. Id. The defendant’s nervous demeanor, as well

as his contradictory and illogical statements provided evidence of drug activity. Id.

Additionally, he possessed a large amount of cash and multiple cell phones, and he

drove a rental car registered in another person’s name. Id. The court determined

these observations provided reasonable suspicion of criminal activity, allowing the

officer to lawfully extend the traffic stop and conduct a dog sniff. Id.

 In reconsideration of our decision, we are bound by the Supreme Court’s

holdings in Bullock. Therefore, we must conclude Trooper Lamm’s actions of

requiring Defendant to exit his car, frisking him, and making him sit in the patrol

car while he ran records checks and questioned Defendant, did not unlawfully extend

 -9-
 STATE V. REED

 Opinion of the Court

the traffic stop. Yet, this case is distinguishable from Bullock because after Trooper

Lamm returned Defendant’s paperwork and issued the warning ticket, Defendant

remained unlawfully seized in the patrol car.

 Ordinarily, “an initial traffic stop concludes and the encounter becomes

consensual only after an officer returns the detainee’s driver’s license and

registration.” State v. Jackson, 199 N.C. App. 236, 243, 681 S.E.2d 492, 497 (2009);

see also State v. Kincaid, 147 N.C. App. 94, 100, 555 S.E.2d 294, 299 (2001) (stating

“[a] reasonable person, under the circumstances, would have felt free to leave when

the documents were returned. Therefore, the first seizure concluded when [the

officer] returned the documents to defendant.”). Yet, the governing inquiry is

whether under the totality of the circumstances a reasonable person in the detainee’s

position “would have believed that he was not free to leave.” United States v.

Mendenhall, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509 (1980).

 Here, a reasonable person in Defendant’s position would not believe he was

permitted to leave. When Trooper Lamm returned Defendant’s paperwork,

Defendant was sitting in the patrol car. Trooper Lamm continued to question

Defendant as he sat in the patrol car. When the trooper left the patrol car to seek

Peart’s consent to search the rental car, he told Defendant to “sit tight.” At this point,

a second trooper was present on the scene, and stood directly beside the passenger

 - 10 -
 STATE V. REED

 Opinion of the Court

door of Trooper Lamm’s vehicle where Defendant sat. Moreover, at trial Trooper

Lamm admitted at this point Defendant was not allowed to leave the patrol car.

 A reasonable person in Defendant’s position would not feel free to leave when

one trooper told him to stay in the patrol car, and another trooper was positioned

outside the vehicle door. Therefore, even after Trooper Lamm returned Defendant’s

paperwork, Defendant remained seized. To detain a driver by prolonging the traffic

stop, an officer must have “reasonable articulable suspicion that illegal activity is

afoot.” State v. Williams, 366 N.C. 110, 116, 726 S.E.2d 161, 166-67 (2012).

 As we concluded in our first opinion, Trooper Lamm did not have reasonable

suspicion of criminal activity to justify prolonging the traffic stop. The facts suggest

Defendant appeared nervous, Peart held a dog in her lap, dog food was scattered

across the floorboard of the vehicle, the car contained air fresheners, trash, and

energy drinks—all of which constitute legal activity consistent with lawful travel.

While Trooper Lamm initially had suspicions concerning the rental car agreement,

the rental company confirmed everything was fine.

 These facts are distinguishable from Bullock in which the officer observed the

defendant “speeding, following a truck too closely, and weaving briefly over the white

line marking the edge of the road.” Bullock at ___, ___ S.E.2d at ___. Then the

defendant’s hand trembled as he handed over his license. Id. Additionally, the

defendant was not the authorized driver on his rental agreement, he had two cell

 - 11 -
 STATE V. REED

 Opinion of the Court

phones, and a substantial amount of cash on his person. Id. He failed to maintain

eye contact, and made several contradictory, illogical statements. Id.

 We therefore conclude, after reconsideration of our prior opinion in light of

Bullock, the trial court erred in denying Defendant’s motion to suppress because after

the lawful duration of the traffic stop concluded Trooper Lamm unlawfully detained

Defendant without reasonable suspicion of criminal activity.

 III. Conclusion

 For the foregoing reasons, we reverse the trial court’s order.

 REVERSE.

 Chief Judge McGEE concurs.

 Judge DILLON dissents in a separate opinion.

 - 12 -
 No. COA16-33-2 – STATE v. REED

 DILLON, Judge, dissenting.

 Because I agree with the State that Judge Adams’s findings support a

conclusion that Trooper Lamm obtained Defendant’s consent to search the rental

vehicle after the traffic stop had concluded, and that Defendant was otherwise free to

leave, I respectfully dissent.

 Even assuming, arguendo, that Trooper Lamm’s exchange with Defendant

following the conclusion of the traffic stop was non-consensual, Trooper Lamm had

reasonable suspicion of separate, independent criminal activity to support an

extension of the traffic stop beyond the time necessary to complete the mission of

citing Defendant for the traffic violation.

 I. The Seizure Had Ended Because the Traffic Stop Had Concluded and Defendant
 was Free to Leave.

 The majority contends that the stop was unconstitutionally extended when

Defendant was sitting in the patrol car and his companion, Ms. Peart, had returned

to the rental car. The majority concluded that a person in Defendant’s position would

not feel free to leave at the point of the encounter when Trooper Lamm told Defendant

to “sit tight” in the patrol car while Trooper Lamm returned to the rental vehicle to

seek to Ms. Peart’s consent to search the rental vehicle. However, I disagree with

this analysis: As explained below, the findings of Judge Adams show that Defendant

gave his consent to Trooper Lamm to search the rental vehicle (or ask Ms. Peart for

consent) at a point during the encounter when Defendant was no longer seized, well
 STATE V. REED

 DILLON, J., dissenting

before Trooper Lamm told Defendant to “sit tight.” And once Defendant gave his

consent to the search, it was certainly reasonable for Trooper Lamm to direct

Defendant to “sit tight” for officer safety while he returned to the rental vehicle, which

Ms. Peart was seated inside.

 I agree with the majority that while Trooper Lamm held Defendant’s

paperwork and “issued the warning ticket for speeding as Defendant was sitting in

the patrol car, Defendant was still seized.

 However, based on controlling jurisprudence, the seizure ended when, as the

trial court found, Trooper Lamm gave the warning ticket, along with Defendant’s

paperwork, to Defendant and told Defendant that the traffic stop was completed.

Indeed, our Court and the Fourth Circuit Court of Appeals have held on a number of

occasions that “[g]enerally, an initial traffic stop concludes and the encounter

becomes consensual . . . after an officer returns the detainee’s driver’s license and

registration.” State v. Jackson, 199 N.C. App. 236, 243, 681 S.E.2d 492, 497 (2009).1

United States v. Sullivan, 138 F.3d 126, 133-34 (4th Cir. 1998)2. Further, as Judge

Adams found, Trooper Lamm did not seek Defendant’s consent to search the rental

 1 See also State v. Henry, 237 N.C. App. 311, 324, 765 S.E.2d 94, 104 (2014) (recognizing that
“a traffic stop is not terminated until after the officer returns the driver’s license or other documents
to the driver”); State v. Cottrell, 234 N.C. App. 736, 742-43, 760 S.E.2d 274, 279 (2014) (restating the
general principle that the return of motorist documentation typically renders any subsequent
exchanges between motorist and law enforcement consensual). In State v. Kincaid, we recognized that
“subject to a totality of the circumstances test, that once an officer returns the license and registration,
the stop is over and the person is free to leave.” 147 N.C. App. 94, 99, 555 S.E.2d 294, 298 (2001).
 2 See also United States v. Whitney, 391 F. App’x. 277, 280-81 (4th Cir. 2010); United States v.

Meikle, 407 F.3d 670, 673-74 (4th Cir. 2005).

 2
 STATE V. REED

 DILLON, J., dissenting

car until after returning Defendant’s paperwork to him and informing Defendant that

the traffic stop had concluded. There is no finding to suggest any restraint or

compulsion by Trooper Lamm when he obtained Defendant’s consent to search the

rental vehicle. That is, Trooper Lamm did not simply launch into an interrogation

after returning to Defendant his license and other paperwork. Rather, as Judge

Adams found, Trooper Lamm took the extra step of first asking Defendant for his

consent to question him further. See Kincaid, 147 N.C. App. at 102, 555 S.E.2d at

300 (holding in a similar situation when the officer “asked if he could question

defendant . . . [,] [he] did not deprive defendant of freedom of action in any significant

way. After [the officer] handed back defendant’s license and registration, defendant

was free to leave and free to refuse to answer questions”). Judge Adams also found

that Trooper Lamm “was at all times casual and conversational in his words and

manner.”3 See Sullivan, 138 F.3d at 133 (finding relevant that “there is no indication

that [the officer] employed any physical force or engaged in any outward displays of

authority”). Also significant is that the questioning occurred on a public highway

during the daytime.

 It is true that there is no indication (or finding) that Trooper Lamm ever

expressly told Defendant that he “was free to leave.” The United States Supreme

 3 Defendant challenges the finding regarding the casualness of the conversation; however, he
does not challenge this finding with regards to any portion of the encounter occurring after Trooper
Lamm informed Defendant that the traffic stop was completed.

 3
 STATE V. REED

 DILLON, J., dissenting

Court, however, has held that an officer is not required to inform a detainee that he

is free to leave in order to transform a traffic stop into a consensual encounter. See

Ohio v. Robinette, 519 U.S. 33, 39-40 (1996) (concluding that it would be “unrealistic

to require police officers to always inform detainees that they are free to go before a

consent to search may be deemed voluntary.”). The Fourth Circuit has reached this

same conclusion. See Sullivan, 138 F.3d at 133 (“While [the officer] never told [the

defendant] that he was free to go, that fact alone is not dispositive.”) And our Court

has also reached this same conclusion. See Kincaid, 147 N.C. App. at 97, 555 S.E.2d

at 297 (affirming the trial court’s conclusion that the defendant was free to leave

“although the officer never told defendant that he was free to leave”).

 Judge Adams further found that after Defendant gave Trooper Lamm consent

to search the rental vehicle (subject to Ms. Peart’s consent), Trooper Lamm directed

Defendant to “sit tight” in the unlocked patrol car while he returned to the rental

vehicle to ask Ms. Peart for her consent to the search. I conclude that it was

constitutionally permissible for Trooper Lamm, for purposes of officer safety, to direct

Defendant to remain in the patrol car while he carried out the search to which

Defendant had voluntarily consented.4 Certainly, where an individual has consented

 4 Defendant does not make any argument concerning whether Ms. Peart would not have felt
free to leave when she gave her consent to search the vehicle or any argument about the impact the
validity of Ms. Peart’s consent should have on our analysis in this prosecution of Defendant. Therefore,
any issue concerning Ms. Peart’s consent is not before us.

 4
 STATE V. REED

 DILLON, J., dissenting

to a search, an officer can direct that individual away from the place being searched

and away from other companions for purposes of officer safety.

 In conclusion, since Defendant gave his consent to search the car after the

traffic stop had concluded and the encounter between Defendant and Trooper Lamm

became consensual, I would affirm Judge Adams’ order.

 II. Trooper Lamm Otherwise Had Reasonable Suspicion to Extend the Stop.

 Assuming, arguendo, that the traffic stop did not become consensual after

Trooper Lamm returned all of the paperwork to Defendant, informed Defendant that

the traffic stop had concluded, and asked Defendant for his consent to question him

further, I believe that Judge Adams’s findings support her conclusion that Trooper

Lamm had reasonable suspicion that Defendant was transporting illegal drugs. I so

conclude based on the holding of our Supreme Court in State v. Bullock, ___ N.C. ___,

805 S.E.2d 671 (2017), and for the reasons stated in my dissent in the first opinion

filed in the present case, State v. Reed, ___ N.C. App. ___, ___, 791 S.E.2d 486, 493-

96 (2016).

 5