TYSON, Judge.
*502 David Leroy Carver ("Defendant") appeals from an order denying his motion to suppress. We reverse and remand.
I. Background
Beaufort County Sheriff's Deputy Dominic Franks received a dispatch call, which had originated from an anonymous tipster, a little before 11:00 p.m. on 8 January 2016. Deputy Franks was advised of a vehicle being located in a ditch on Woodstock Road, possibly with a "drunk driver, someone intoxicated," and that "a truck was attempting - getting ready to pull them out." Deputy Franks received no information concerning the description of the car, the truck, or the driver. There was also no information regarding the caller or at what time the call was received.
When Deputy Franks arrived at the rural location approximately ten minutes later, he noticed a white Cadillac "catty-cornered" or "partially in" someone's driveway at an angle. The vehicle had mud on the driver's side, and Deputy Franks opined that from "gouges in the side of the road ... it appeared the vehicle had ran off the road." Deputy Franks did not stop at the vehicle to determine ownership and kept driving, though he testified he did not observe anyone in or around the vehicle as he passed.
As Deputy Franks continued driving past, he observed a truck "a couple of hundred feet" from where the Cadillac was parked, traveling away from his location. Deputy Franks testified he followed the truck to check its license plate. When he caught up from behind, he estimated the truck was traveling thirty-five to forty miles an hour, approximately fifteen to twenty miles below the posted 55 m.p.h. speed limit. Deputy Franks testified the truck was the only truck on the highway and "it was big enough to pull the car out." He did not see any chains, straps, *503 or other apparatus that would indicate that the truck had just pulled a vehicle out of a ditch.
Deputy Franks' sole reason to initiate the traffic stop was "due to what was called out from communications." The truck promptly came to a stop on the highway. The truck was being driven by a Mr. Griekspoor. Defendant *197 was observed sitting in the passenger seat. Deputy Franks explained to Mr. Griekspoor that there was a report of a truck attempting to pull a vehicle out of a ditch. Mr. Griekspoor told Deputy Franks that he had pulled Defendant's car out of the ditch, was giving him a ride home, and he was "trying to help out a friend."
Deputy Franks observed that Defendant's legs were "covered in mud" from "half his thighs down." Defendant did not answer Deputy Franks' question of why he was so muddy. Deputy Franks' supervisor, Corporal Sheppard, arrived upon the scene as Deputy Franks was collecting Mr. Griekspoor's driver's license and registration.
Deputy Franks filled his supervisor in on the situation. Corporal Sheppard went to the passenger side to talk with Defendant, a "routine practice" according to Corporal Sheppard. Deputy Franks took Mr. Griekspoor's documents back to his patrol car to get information from communications on the license and registration and found no wants or warrants outstanding. He returned Mr. Griekspoor's documents while Corporal Sheppard was speaking with Defendant.
Corporal Sheppard asked Defendant to open the door and testified he noticed "a moderate odor of alcohol" from the passenger area. Defendant exited the truck at the officer's request. Corporal Sheppard stated he "continue[d] smelling the alcohol coming from [Defendant]," and observed Defendant was "unsteady on his feet."
Corporal Sheppard instructed Defendant to perform the Horizontal Gaze Nystagmus test. Corporal Sheppard purportedly detected all of the six clues from the test. By the time the Highway Patrol arrived to "process" Defendant ten to fifteen minutes later, he had been detained "based on [Corporal Sheppard's] suspicion of DWI." Defendant was given a Breathalyzer test by Highway Patrol Trooper Peele, with a result of 0.08. Defendant was charged with driving while impaired.
Defendant filed a motion to suppress evidence. The district court denied Defendant's motion, found him guilty of impaired driving, and sentenced him to sixty days imprisonment, which was suspended for twelve months of unsupervised probation. Defendant appealed to the superior court, where he filed another motion to suppress *504 evidence. After a hearing, the superior court entered an order denying Defendant's motion.
Defendant preserved his right to appeal the denial of his motion to suppress and entered a plea of guilty to impaired driving. The superior court sentenced Defendant to thirty days imprisonment, which was suspended for six months of unsupervised probation. Defendant gave oral notice of appeal.
II. Jurisdiction
An appeal of right lies to this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444 (2017).
III. Issues
Defendant argues the deputy's observations of the scene and an anonymous tip were insufficient to defeat Defendant's motion to suppress. Defendant also argues the trial court erred by finding (1) there were "little artificial lights" in the general area; (2) there were gouges in the dirt shoulder of the road leading to the ditch in close proximity to the Defendant's car; and, (3) the deputy did not stop at the white car because he observed a truck going in the same direction he was.
IV. Standard of Review
On review of a denial of a motion to suppress, this Court is limited to the determination of "whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Rose , 170 N.C. App. 284, 287-88, 612 S.E.2d 336, 338-39 (2005) (citations and quotation marks omitted).
V. Investigatory Stop
"The Fourth Amendment protects individuals against unreasonable searches and seizures. The North Carolina Constitution provides similar protection." State v. Hernandez , 208 N.C. App. 591, 597, 704 S.E.2d 55, 59 (2010) (citations and quotation marks omitted).
*198 "[B]rief investigatory detentions such as those involved in the stopping of a vehicle" are considered seizures of the person and subject to Fourth Amendment protections. State v. Watkins , 337 N.C. 437, 441, 446 S.E.2d 67, 69-70 (1994) (citation omitted).
The Fourth Amendment permits brief investigative stops ... when a law enforcement officer has a particularized *505 and objective basis for suspecting the particular person stopped of criminal activity. The reasonable suspicion necessary to justify such a stop is dependent upon both the content of information possessed by police and its degree of reliability. The standard takes into account the totality of the circumstances-the whole picture. Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.
Navarette v. California , 572 U.S. 393, 396-97, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680, 685 (2014) (citations and quotation marks omitted).
"An investigatory stop must be justified by a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. To determine whether this reasonable suspicion exists, a court must consider the totality of the circumstances." State v. Kincaid , 147 N.C. App. 94, 97, 555 S.E.2d 294, 297-98 (2001) (citations and internal quotation marks omitted). "The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." Id. at 98, 555 S.E.2d at 298 (quoting Watkins , 337 N.C. at 441-42, 446 S.E.2d at 70 ).
It is well established that [a]n anonymous tip can provide reasonable suspicion as long as it exhibits sufficient indicia of reliability. Even if a tip lacks sufficient indicia of reliability, it may still provide a basis for reasonable suspicion if it is buttressed by sufficient police corroboration. In sum, to provide the justification for a warrantless stop, an anonymous tip must have sufficient indicia of reliability, and if it does not, then there must be sufficient police corroboration of the tip before the stop may be made.
State v. Veal, 234 N.C. App. 570, 577, 760 S.E.2d 43, 48 (2014) (internal citations and quotation marks omitted).
The State correctly concedes the anonymous tip in and of itself likely fails to provide sufficient reliability to justify a stop. See Florida v. J.L. , 529 U.S. 266, 270, 120 S.Ct. 1375, 1378, 146 L.Ed. 2d 254, 260 (2000). The anonymous tip provided no description of either the car or the truck or how many people were involved. There is no indication of when the call came in or when the anonymous tipster witnessed the car in the ditch with a truck attempting to pull it out. However, the State argues since "nearly every *506 aspect of the tip was corroborated by the officer," the deputy had sufficient reasonable suspicion to stop the truck. We disagree.
The State asserts the facts in this case are comparable to State v. Watkins . In Watkins , an officer was informed of a suspicious vehicle behind the Virginia Carolina Well Drilling Company from a tip provided by an anonymous caller around 3:00 a.m. Watkins , 337 N.C. at 442, 446 S.E.2d at 70. The officer did not know the description of the "suspicious vehicle," but he did know that the business was normally closed at that time. Id . As he investigated, the officer saw a vehicle driving away. Id . at 440, 446 S.E.2d at 69. The officer followed, turning on his blue lights and stopping the car "for the purpose of continuing his [suspicious vehicle] investigation and not because of anything he observed about the defendant's driving." Id . at 440-41, 446 S.E.2d at 69.
Our Supreme Court upheld the stop, holding that the officer had reasonable suspicion. "All of the facts, and the reasonable inferences from those facts, known to the officer when he decided to make the investigatory stop, would lead to a reasonably cautious law enforcement officer to suspect that criminal activity was afoot." Id . at 443, 446 S.E.2d at 70. "[C]onsidered as a whole and from the point of view of a reasonably cautious officer on the scene, the officer had a reasonable suspicion to detain defendant for a brief investigatory *199 stop." Id . at 443, 446 S.E.2d at 71.
Unlike in Watkins , the facts and inferences drawn from these facts are insufficient for a reasonable officer to suspect criminal activity had occurred. When Deputy Franks passed the Cadillac and came up behind the truck, he saw no equipment to indicate the truck had pulled, or had been able to pull, a car out of a ditch. There were no chains or other apparatuses visible to the deputy. Deputy Franks could not see how many people were in the truck prior to the stop. He testified the truck was not operating in violation of the law. He believed it was a suspicious vehicle merely because of the fact it was on the highway.
Subsequent opinions from this Court are more applicable to the facts in this case. In State v. Peele , the officer responded to a call describing a burgundy pickup truck being driven recklessly by a possible intoxicated driver "headed towards the Holiday Inn intersection." 196 N.C. App. 668, 669, 675 S.E.2d 682, 684 (2009). The officer arrived on the scene "within a second," saw and followed a burgundy truck for about a tenth of a mile, observed the truck "weave within his lane once," and pulled the truck over. Id . This Court held that the officer lacked reasonable suspicion because "all we have is a tip with no indicia of reliability, no *507 corroboration, and conduct falling within the broad range of what can be described as normal driving behavior." Id . at 674, 675 S.E.2d at 687 (citation and quotation marks omitted).
The Court in Peele relies on State v. McArn , where this Court found an anonymous tip describing a specific car at a specific location was insufficient to provide the officer with reasonable suspicion:
[T]he fact that the anonymous tipster provided the location and description of the vehicle may have offered some limited indicia of reliability in that it assisted the police in identifying the vehicle the tipster referenced. It has not gone unnoticed by this Court, however, that the tipster never identified or in any way described an individual. Therefore, the tip upon which Officer Hall relied did not possess the indicia of reliability necessary to provide reasonable suspicion to make an investigatory stop. The anonymous tipster in no way predicted defendant's actions. The police were thus unable to test the tipster's knowledge or credibility. Moreover, the tipster failed to explain on what basis he knew about the white Nissan vehicle and related drug activity.
State v. McArn , 159 N.C. App. 209, 214, 582 S.E.2d 371, 375 (2003).
In State v. Horton , a police officer received a dispatch regarding a "suspicious white male, with a gold or silver vehicle in the parking lot" of a local business in an area with a history of break-ins. State v. Horton , --- N.C. App. ----, ----, 826 S.E.2d 770, 771-72, 2019 WL 1442083 at *1, 2019 N.C. App. LEXIS 302 at *2 (2019). When the officer arrived at the location, he exited his patrol vehicle and walked toward a silver car with a black male in the driver's seat, who then drove away. Id. at ---- - ----, 826 S.E.2d at 772-74, 2019 WL 1442083 at *2-3. The officer followed the vehicle because he thought the man's behavior was a little odd, but never observed "any bad driving, traffic violations, criminal offense, or furtive movements" prior to stopping the vehicle. Id . at ----, 826 S.E.2d at ----. When the officer conducted a traffic stop, he smelled a strong odor of marijuana and searched the vehicle. Id. at ----, 826 S.E.2d at 774-75, 2019 WL 1442083 at *4. The search revealed narcotics, a scale, a stolen firearm, and cash. Id.
This Court found the officer's justification for the traffic stop was "nothing more than an inchoate and unparticularized suspicion or hunch." Id. at ----, 826 S.E.2d at 775 (quoting United States v. Sokolow , 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed. 2d 1, 7 (1989) ). The anonymous tip "reported no crime and was only partially correct," and "it merely described the individual as 'suspicious' without any indication as to why." Id. at ----, 826 S.E.2d at 776.
*508 The type of detail provided in the [anonymous] tip and corroborated by the officers is critical in determining whether the tip can supply the reasonable suspicion necessary for the stop. Where the detail contained in the tip merely concerns identifying *200 characteristics, an officer's confirmation of these details will not legitimize the tip.
Id. at ----, 826 S.E.2d at 775 (quoting State v. Johnson , 204 N.C. App. 259, 264, 693 S.E.2d 711, 715 (2010) ).
Here, the details in the anonymous tip were not sufficient to even establish identifying characteristics, let alone to allow Deputy Franks to corroborate the details. See id. The anonymous tipster merely indicated a car was in a ditch, someone was present who may be intoxicated, and a truck was preparing to pull the vehicle out of the ditch. There was no description of the car, the truck, or any individuals who may have been involved. After Deputy Franks passed the scene and the Cadillac and drove into a curve, he noticed a truck ahead driving under the posted speed limit. Deputy Franks' testimony indicated the road was curvy and the truck "was already in the curve" as he approached it from behind.
Deputy Franks provided no testimony tending to show the truck was engaging in any unsafe, reckless, or illegal driving behavior prior to his stop. He was unable to ascertain if there was even a passenger in the truck. At best, "all we have is a tip with no indicia of reliability, no corroboration, and conduct falling within the broad range of what can be described as normal driving behavior." Peele , 196 N.C. App. at 674, 675 S.E.2d at 687.
Under the totality of the circumstances, Deputy Franks lacked reasonable suspicion to conduct a warrantless traffic stop of Mr. Griekspoor's truck. See Kincaid , 147 N.C. App. at 97, 555 S.E.2d at 297-98. Nothing in the anonymous tip would have indicated this truck was the one that had pulled the car out of the ditch. The truck was merely driving along a public highway and not committing any driving infractions. Deputy Franks' stop of Mr. Griekspoor was nothing more than a warrantless search and seizure based upon a mere suspicion or a hunch. Horton , at ----, 826 S.E.2d at ----, 2019 WL 1442083 at *12.
The State concedes the anonymous tip, without more, was insufficient to justify the warrantless stop. The trial court erred in concluding Deputy Franks had a reasonable suspicion to stop the truck and in denying Defendant's motion to suppress.
*509 VI. Conclusion
The anonymous tip was insufficient to provide reasonable suspicion for Deputy Franks to stop Mr. Griekspoor's truck travelling on a highway. Deputy Franks did not have reasonable suspicion to conduct this warrantless seizure and search. Based on our determination that the trial court's conclusion of law was error, we need not address Defendant's arguments concerning the trial court's findings of fact.
The trial court erred in denying Defendant's motion to suppress. We reverse and remand for entry of an order granting Defendant's motion. It is so ordered.
REVERSED AND REMANDED.
Chief Judge McGEE concurs.
Judge BERGER dissenting with separate opinion.