STATE v. HEIEN

[226 N.C. App. 280 (2013)]

## IV.  Conclusion

For the reasons discussed above, the trial court's order is

AFFIRMED.

Judges STEELMAN and GEER concur.

———————————

STATE OF NORTH CAROLINA
v.
NICHOLAS BRADY HEIEN

No. COA11-52-2

Filed 2 April 2013

**1.  Search and Seizure—traffic stop—not unduly prolonged—license returned—consent to search**

The trial court did not err in concluding that a traffic stop of defendant for driving with a malfunctioning brake light had not been unduly prolonged. A reasonable motorist or vehicle owner would have understood that with the return of his license, the purpose of the initial stop had been accomplished and he was free to leave, to refuse to discuss matters further, and to refuse to allow a search. The trial court correctly concluded that defendant consented to the subsequent search of his vehicle.

**2.  Search and Seizure—scope of search not exceeded**

A police officer did not exceed the scope of the search of defendant's vehicle as there was no requirement that the officer inform defendant of what he was searching for.

Judge McGEE dissents with a separate opinion.

Appeal by defendant from order dated 25 March 2010 by Judge Vance Bradford Long and judgments entered 26 May 2010 by Judge A. Moses Massey in Surry County Superior Court. Heard in the Court of Appeals 24 May 2011 with opinion filed 16 August 2011, reversing and vacating the trial court's judgments. On remand from the North Carolina Supreme Court on 14 December 2012.

*Attorney General Roy Cooper, by Special Deputy Attorney General J. Allen Jernigan, for the State.*

*Michele Goldman for defendant appellant.*


McCULLOUGH, Judge.

Nicholas Brady Heien ("defendant") pled guilty to attempted trafficking in cocaine by transportation and possession in Surry County Superior Court in May 2010, preserving his right to seek review of the denial of his motion to suppress. The trial judge found defendant's prior record level to be Level I and sentenced defendant to ten to twelve months on each count with the sentence on the second count to be served consecutively to the first. Defendant appealed to this Court (*"Heien I"*). That appeal resulted in our Court reversing defendant's conviction. In that case, this Court held that the traffic stop which led to defendant's arrest was not based on reasonable suspicion. The State successfully sought discretionary review of our decision. Our Supreme Court reversed and remanded to this Court so that the remaining issues raised by defendant could be addressed. This appeal addresses defendant's other challenges to the search which resulted in his conviction.

The events which led to defendant's arrest and conviction originated with a traffic stop initiated by Sergeant M.M. Darisse, an officer with the Surry County Sheriff's Department. The facts regarding this stop are more fully set forth in our initial opinion concerning defendant's case, *State v. Heien,* ___ N.C. App. ___, 714 S.E.2d 827 (2011) (*Heien I*), and our Supreme Court's opinion which reversed *Heien I, State v. Heien,* ___ N.C. ___, ___ S.E.2d ___ (filed 14 December 2012). The facts will not be repeated in this opinion except to the extent necessary to support this Court's rationale.

In this Court's initial decision concerning defendant's appeal, we reversed defendant's conviction on the basis of the officer's stop, which the lower court found to be valid. There the trial court stated, "[Sergeant] Darisse had a reasonable and articulable suspicion that the . . . vehicle and the driver were violating the laws of this State by operating a motor vehicle without a properly functioning brake light." In *Heien I*, this Court found, after an extensive statutory analysis, that the statute dealing with brake lights as opposed to taillights, only required a vehicle to have one functioning brake light, and thus the officer's belief

that defendant's vehicle must have two functioning brake lights was erroneous. That statute reads:

> (g) No person shall sell or operate on the highways of the State any motor vehicle, motorcycle or motor-driven cycle, manufactured after December 31, 1955, unless it shall be equipped with a *stop lamp* on the rear of the vehicle. The *stop lamp* shall display a red or amber light visible from a distance of not less than 100 feet to the rear in normal sunlight, and shall be actuated upon application of the service (foot) brake. The *stop lamp* may be incorporated into a unit with one or more other rear lamps.

N.C. Gen. Stat. § 20-129(g) (2011) (emphasis added).

The State appealed and our Supreme Court ruled that the officer's traffic stop was objectively reasonable. *Heien*, ___ N.C. ___, ___ S.E.2d ___. At the Supreme Court, the State accepted this Court's statutory interpretation in *Heien I*. Our Supreme Court stated:

> After considering the totality of the circumstances, we conclude that there was reasonable, articulable suspicion to conduct the traffic stop of the Escort in this case. We are not persuaded that, because Sergeant Darisse was mistaken about the requirements of our motor vehicle laws, the traffic stop was necessarily unconstitutional. After all, reasonable suspicion is a "commonsense, nontechnical conception[] . . . on which reasonable and prudent men, not legal technicians, act," *Ornelas*, 517 U.S. at 695, 116 S. Ct. at 1661, 134 L. Ed. 2d at 918 (citations and internal quotation marks omitted), and the Court of Appeals analyzed our General Statutes at length before reaching its conclusion that the officer's interpretation of the relevant motor vehicle laws was erroneous. After considering the totality of the circumstances, we hold that Sergeant Darisse's mistake of law was objectively reasonable and that he had reasonable suspicion to stop the vehicle in which defendant was a passenger. Accordingly, we reverse the decision of the Court of Appeals and remand this case to that court for additional proceedings.

*Heine*, ___ N.C. at ___, ___ S.E.2d at ___.[1]

---

1. Interestingly, neither party briefed nor argued the applicability of N.C. Gen. Stat. § 12-3(1) which may affect statutory construction when the singular or plural is to be

The case has now been remanded to this Court to address defendant's remaining challenge to the events leading up to his arrest. In defendant's Motion To Suppress, defendant argues:

> 10.  No traffic charges were filed, and only a warning ticket was written. The continuation of the investigation after the motor vehicle stopped, including the questioning of the Defendant, was not based on a reasonable articulable suspicion that criminal activity had been committed or was being committed.
>
> 11.  The time that lapsed <u>after</u> Officer Darisse learned from the Department of Motor Vehicles computer that as to Mr. [V]asquez, ". . . everything was valid on the license and registration . . ." and wrote the warning ticket, constituted an unreasonably prolonged traffic stop and Defendant was unlawfully detained and his car unlawfully searched.
>
> 12.  Under the totality of the circumstances the officers had no just cause to detain the Defendant, question him, or search his vehicle without a warrant.
>
> 13.  The questioning and other investigation of the Defendant, the prolonged stop, and the search and seizure of Defendant and his property were in violation of the Fourth Amendment of the <u>United States Constitution</u> as the same is made applicable to the states, and are in violation of Article I, Sections 19 and 20 of the <u>Constitution of the State of North Carolina.</u>

## II. SCOPE OF THE VEHICLE SEARCH

> 14.  The alleged controlled substance was found inside a sandwich bag which was inside a paper towel which was inside a white grocery bag which was inside the side compartment of a duffle bag which was inside the vehicle. Neither Officer Darisse nor Officer Ward advised the Defendant that they were going to search his car for narcotics before he gave verbal consent. The Defendant was entitled to know the object of their search prior to giving consent. Had he known, he would have

---

utilized. As the interpretation of N.C. Gen. Stat. § 20-129(g) is not before this Court, we decline to decide if this statute has any applicability.

had the opportunity to place explicit limitations on the
search. The failure of the officers to explain the object
of the search violates Defendant's right to be free from
unreasonable searches under the Fourth Amendment to
the [United] States Constitution and Articles 19 and 20 of
the Constitution of North Carolina, and evidence of items
found inside the duffle bag and elsewhere inside the vehi-
cle should be suppressed.

## STANDARD OF REVIEW

In reviewing a trial court's order concerning a motion to suppress,
this Court utilizes the following test:

> Generally, an appellate court's review of a trial court's
> order on a motion to suppress "is strictly limited to a deter-
> mination of whether its findings are supported by compe-
> tent evidence, and in turn, whether the findings support
> the trial court's ultimate conclusion." Where, however, the
> trial court's findings of fact are not challenged on appeal,
> they are deemed to be supported by competent evidence
> and are binding on appeal.

*State v. Roberson*, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36 (2004)
(citations omitted). "[C]onclusions of law drawn from the findings of
fact are . . . reviewable *de novo*." *Huyck Corp. v. Town of Wake Forest*,
86 N.C. App. 13, 15, 356 S.E.2d 599, 601 (1987) (citations omitted).

## I. Length of Stop

[1] Defendant argues that the traffic stop was unduly prolonged in his
motion. Our analysis begins with the pertinent trial court's findings
of fact:

> 8)  Darisse upon instigating his blue lights, observed
>     a head "pop up" out of the back seat of the subject
>     vehicle and then disappear.
>
> 9)  Darisse upon approaching the vehicle observed the
>     defendant lying in the back seat of the vehicle.
>
> 10) Darisse observed the defendant lying in the back seat
>     underneath a blanket. Darisse informed the driver
>     of the vehicle that he was being stopped for a non-
>     functioning brake light and asked the driver to step
>     out to the rear of the vehicle. The driver complied.

Darisse engaged in a brief conversation with the driver asking the driver if anything was wrong with the person in the back seat, from where the driver began travelling and his ultimate destination. The Driver informed Darisse that the defendant was tired and the pair were going to West Virginia. The driver was informed that the officer intended to issue him a warning citation so long as long documentation provided to Darisse was valid. Darisse took the driver's license and registration then returned to his vehicle. Darisse formed the opinion that the driver appeared nervous to him as he made poor eye contact and he was continuously placing his hair in a ponytail and then removing his hair from a ponytail. Defendant continued to lie in the back of the vehicle and did so through the entire stop until he was later approached by Darisse.

11) Officer Ward arrived at the scene of the stop. Ward was informed by Darisse that a subject was lying in the back of the vehicle underneath a blanket. Ward went to the vehicle and asked defendant for his driver's license in order to determine his identity and check for outstanding warrants. The defendant complied and gave his driver's license to Ward without getting up from his position.

12) The driver continued to stand between Darisse's patrol car and the subject car as Ward asked for the defendant's driver's license.

13) The interaction between Ward and the defendant occurred in approximately one to two minutes.

14) The stop of the subject vehicle was initiated at approximately 7:55:40 a.m.

15) Darisse re-approached the driver and returned his driver's license and any other identifying documents he had received and gave the driver a warning citation. Darisse then asked the driver if he would be willing to answer some questions. The driver indicated by nodding his head that he had no objection to answering questions and stated he would answer

questions. Darisse's tone and manner with the driver of the vehicle was polite, non-confrontational and conversational.

16) The driver denied any type of contraband in the car.

17) The driver denied guns or large sums of cash in the car.

18) This conversation occurred within a period of a minute to two minutes.

19) Darisse then asked for permission to search the vehicle. The driver did not object to searching the vehicle, but informed Darisse that the vehicle was the defendant's, and Darisse should make the request of the defendant. Darisse approached the defend-ant who was still lying in the back of the vehicle and asked for permission to search the vehicle. The defendant informed Darisse that he had no objection to the vehicle being searched, although the officers might have a problem because the inside of the vehicle was messy.

20) The tone and manner of Darisse when asking for per mission to search the vehicle with the defendant was conversational, non-confrontational and polite.

The Fourth Amendment to the United States Constitution as well as Article I, Section 20 of the North Carolina Constitution guarantee the right of people to be secure in their person and property, and free from unreasonable searches. *E.g., State v. Arrington,* 311 N.C. 633, 319 S.E.2d 254 (1984). A traffic stop is permitted if an officer has a reasonable articulable suspicion that there is criminal activity afoot or when a motorist commits a violation in his or her presence. *Heien,* ___ N.C. ___, ___ S.E.2d ___. In this case our Supreme Court has established that the traffic stop was permissible. The temporary detention of a motorist during a valid traffic stop is recognized as a seizure, but a permissible one, as it is considered reasonable. *Delaware v. Prouse,* 440 U.S. 648, 653, 59 L. Ed. 2d 660, 667 (1979). While it is recognized that the motorist is seized for constitutional purposes, roadside questioning during the encounter does not trigger the need for *Miranda* warnings. *Berkemer v. McCarty,* 468 U.S. 420, 82 L. Ed. 2d 317 (1984). Once the purpose of the stop has been addressed, there must be grounds which provide a reasonable and articulable suspicion in order to justify further delay.

*E.g., State v. Falana*, 129 N.C. App. 813, 816, 501 S.E.2d 358, 360 (1998). Generally, the return of the driver's license or other documents to those who have been detained indicates the investigatory detention has ended. The fact that the documents have been returned does not mean that the officer loses all right to communicate with the motorist. Thus, non-coercive conversation is still permitted. An officer may ask questions or request consent to search so long as the individual freely and voluntarily consents to answer questions or to allow his or her property to be searched. *State v. Kincaid*, 147 N.C. App. 94, 100, 555 S.E.2d 294, 299 (2001) (stating that, while it is true that "initial reasonable suspicion evaporated [upon return of defendant's documents], [the officer] was neither prohibited from simply asking if defendant would consent to additional questioning, nor was the officer prohibited from questioning defendant after receiving his consent"). So long as an individual is aware that he is free to leave or free to refuse to answer questions, there is no bright- line rule requiring police to refrain from requesting consent to speak to an individual or request consent to search his or her person or property. *State v. Brooks*, 337 N.C. 132, 142, 446 S.E.2d 579, 585-86 (1994) (citing *Florida v. Bostick*, 501 U.S. 429, 431, 115 L. Ed. 2d 389, 396 (1991)).

Here, the return of documentation would render the encounter between defendant and the officers consensual so long as a reasonable person would believe he was free to leave or refuse the request. *Kincaid*, 147 N.C. App. at 99, 555 S.E.2d at 299. The trial court found the encounter became consensual. The testimony and exhibits at the suppression hearing tend to support the trial court's findings of fact and conclusions of law; thus, we are required to uphold its determination that the defendant freely consented to the search as a reasonable person in his position would not feel coerced under similar circumstances.

Here the encounter was not unduly prolonged. The trial court found that the traffic stop was initiated at 7:55:40 a.m. and that defendant gave his consent to search at 8:08 a.m. During that time the two officers, Ward and Darisse, had discussed the malfunctioning brake light with the driver, had discovered that the two claimed to be going to different destinations (West Virginia or Kentucky), and had observed that defendant engaged in rather bizarre behavior by lying down on the backseat under a blanket, even when approached by Officer Ward who requested his driver's license. After each person's name was checked for warrants, their licenses were returned. Defendant had his license back before the request to search was made. The trial court found that the officer's tone and manner were conversational and non-confrontational. Both

defendant and the driver were unrestrained during this encounter, no guns were drawn and neither individual was searched before the request to search the vehicle was made.

Based on this record we believe the trial court was entitled to conclude that defendant was aware that the purpose of the initial stop had been concluded and that further conversation was consensual. The dissent maintains that there is insufficient evidence in the record to sustain this conclusion, but there is no requirement that a defendant be explicitly informed of his right to refuse a request to search. *Ohio v. Robinette*, 519 U.S. 33, 39-40, 136 L. Ed. 2d 347, 354-55 (1996).

The dissent seems to argue that this defendant was merely a passenger and, as such, would not feel free to leave or deny consent since the record does not establish that defendant knew the driver Vasquez had received his license and a warning ticket had been issued. This argument ignores the fact that defendant was not a mere passenger, but was the owner. It is uncontroverted that defendant's driver's license had been returned to him prior to the consent to search request. We believe that the trial court's conclusion that defendant consented to this search is reasonable and should be upheld, as we further believe a reasonable motorist or vehicle owner would understand that with the return of his license or other documents, the purpose of the initial stop had been accomplished and he was free to leave, was free to refuse to discuss matters further, and was free to refuse to allow a search.

## II.  Scope of Search

[2]  In his motion to suppress, defendant also asserts that the officer should have informed defendant that he was searching for narcotics so that defendant could have issued some limiting instructions. We find this argument unpersuasive. Just as there is no requirement for an officer to explicitly inform defendant of his right to refuse a search, there is no requirement that an officer inform defendant of what he is searching for. We believe that any reasonable person would understand the officer was searching for weapons, cash or contraband. The driver, Vasquez, was asked if any of those items were in the car. Additionally, defendant informed Darisse that it might be difficult to search the vehicle as it was messy. We also believe both the driver and defendant were aware that the search would be somewhat detailed as the driver was asked to identify any objects that did not belong to him. Sergeant Darisse evidently began to search the vehicle and immediately found a bag of marijuana under the front seat and marijuana seeds in the ashtray. At this point, the officers had probable cause to search the entire vehicle as well as

probable cause to arrest both the driver and defendant. The fact that defendant may have wished to limit the search became irrelevant. *See, e.g., Carroll v. U.S.*, 267 U.S. 132, 69 L. Ed. 543 (1925).

## CONCLUSION

In the case at bar, defendant's automobile which was being driven by another individual, was properly stopped by officers of the Surry County Sheriff's Department while on routine traffic patrol. After the officer had issued a warning ticket for a non-functioning brake light and both persons had their driver's licenses returned, a request to search the vehicle was made. We conclude that on the record before the trial court there was ample evidence that a reasonable person would understand he was free to leave or refuse to consent to the request. The trial court concluded defendant consented to the search and the trial court's conclusion is supported by the evidence presented at the suppression hearing. Shortly after the search was initiated, probable cause to conduct a more detailed search and to arrest the occupants was obtained. We thus will uphold the trial court's conclusion that this was a consensual encounter and affirm its denial of defendant's Motion To Suppress.

Affirmed.

Judge ERVIN concurs.

Judge McGEE dissents with a separate opinion.

McGEE, Judge.

I respectfully dissent from the majority's conclusion that Defendant "freely consented" to the search of his vehicle, since that conclusion is contrary to binding precedent of our Court in *State v. Jackson*, 199 N.C. App. 236, 681 S.E.2d 492 (2009). "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

A crucial fact, found by the trial court, is that Defendant remained lying on the back seat inside his vehicle while officers questioned the driver, who stood outside Defendant's vehicle between an officer's patrol car and Defendant's vehicle. A crucial fact, not found by the trial court,

is that Defendant knew the traffic stop was over when he consented to the search.

"When a police officer makes a traffic stop, the driver of the car is seized within the meaning of the Fourth Amendment. . . . [A] passenger is seized as well and so may challenge the constitutionality of the stop." *State v. Hernandez*, 208 N.C. App. 591, 597, 704 S.E.2d 55, 59 (2010) (alterations in original) (quoting *Brendlin v. California*, 551 U.S. 249, 251, 168 L. Ed. 2d 132, 136 (2007)). "Once the original purpose of the stop has been addressed, in order to justify further delay, there must be grounds which provide the detaining officer with additional reasonable and articulable suspicion or the encounter must have become consensual." *Jackson*, 199 N.C. App. at 241-42, 681 S.E.2d at 496.

First, we determine at what point the original purpose of the stop had been addressed by the officers. In *Jackson*, the officer stopped the vehicle on suspicion the driver was operating the vehicle without a license. *Jackson*, 199 N.C. App. at 238, 681 S.E.2d at 494. This Court concluded the detention was limited to "confirming or dispelling [the officer's] suspicion that [the driver] was operating his vehicle without a license." *Jackson*, 199 N.C. App. at 242, 681 S.E.2d at 496. The officer, however, continued the interrogation. *Id.*

> Such interrogation was indeed an extension of the detention beyond the scope of the original traffic stop as the interrogation was not necessary to confirm or dispel [the officer's] suspicion that [the driver] was operating without a valid driver's license and it occurred after [the officer's] suspicion that [the driver] was operating without a license had already been dispelled.

*Jackson*, 199 N.C. App. at 242, 681 S.E.2d at 496-97.

In this case, the original purpose of the stop was the brake light. The detention was limited to confirming or dispelling the suspicion that the brake light did not function. However, after the citation, an officer asked Defendant for consent to search. The request for Defendant's consent was not necessary to confirm or dispel suspicions regarding the brake light. The request to search extended the detention beyond the scope of the original traffic stop.

Second, we decide whether the delay was justified by determining if (1) the encounter between Defendant and the officers became consensual or (2) there were grounds for a reasonable and articulable suspicion. The trial court concluded "the encounter between the officers,

[D]efendant and the driver, became a consensual encounter at the time the driver voluntarily agreed to answer questions, after the warning citation was delivered to the driver and both driver and [D]efendant had all documents returned."

"The test for determining whether a seizure has occurred is whether under the totality of the circumstances a reasonable person would feel that he was not free to decline the officers' request or otherwise terminate the encounter." *State v. Brooks*, 337 N.C. 132, 142, 446 S.E.2d 579, 586 (1994). "[T]he return of documentation would render a subsequent encounter consensual only if a reasonable person under the circumstances would believe he was free to leave or disregard the officer's request for information." *State v. Kincaid*, 147 N.C. App. 94, 99, 555 S.E.2d 294, 299 (2001) (internal quotation marks omitted). The person at issue is this case is Defendant, not the driver. The trial court and the majority conflate the perspectives of the driver and Defendant, resulting in the use of an erroneous standard.

"[A] passenger in a car that has been stopped by a law enforcement officer is still seized when the stop is extended." *Jackson*, 199 N.C. App. at 240, 681 S.E.2d at 495. "A passenger would not feel any freer to leave when the stop is lawfully or unlawfully extended, especially . . . where the officer was questioning the driver away from the vehicle while the passengers waited in the vehicle." *Id.*

No findings show or suggest Defendant was aware that an officer had issued a citation or that the officers had completed the investigation of the brake lights. In fact, the trial court found that Defendant remained in the back seat, inside the vehicle. A reasonable person under the same circumstances would not believe he was free to leave because, from Defendant's perspective inside the vehicle, the stop continued while the driver was questioned outside. Without a finding that Defendant was privy to the same information as the driver, this Court does not impute the driver's knowledge to Defendant.

Because Defendant consented during an unlawful seizure of his person, the consent was ineffective to justify the search. *See Jackson*, 199 N.C. App. at 243, 681 S.E.2d at 497; *Florida v. Royer*, 460 U.S. 491, 508, 75 L. Ed. 2d 229, 243 (1983).

The majority also considers the length of the delay, without holding it to be *de minimis*. To the extent the majority considers the delay's length, I must dissent because the issue is not preserved. Although the State argues on appeal that (1) the delay was *de minimis* and (2)

reasonable articulable suspicion existed to justify the delay, the State did not make such arguments at trial, and the trial court made no ruling on either issue.

An appellee may list proposed issues on appeal "based on any action or omission of the trial court that was properly preserved for appellate review and that deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken." N.C.R. App. P. 10(c) (2011). "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(a)(1) (2011). These alternative bases are not preserved for our review.

The majority analyzes a second issue, scope of the search, which Defendant did not argue to this Court. Because this issue regarding the scope of the search is not before us, I dissent from the majority as to its conclusion on that issue as well.