IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-839

Filed 18 July 2023

Mecklenburg County, Nos. 19CRS246618-20

STATE OF NORTH CAROLINA

v.

WANG MENG MOUA, Defendant.

Appeal by Defendant from Order entered 15 March 2022 by Judge Lisa Bell and Judgment entered 2 May 2022 by Judge Karen Eady-Williams in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 March 2023.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Tirrill Moore and Special Deputy Attorney General Kristin J. Uicker, for the State.*
>
> *BJK Legal, by Benjamin J. Kull, for the Defendant.*

RIGGS, Judge.

Defendant Wang Meng Moua appeals the order denying his motion to suppress evidence which was entered prior his guilty plea for trafficking in methamphetamine by transport, trafficking in methamphetamine by possession, and keeping or maintaining a vehicle for keeping or selling methamphetamine. Mr. Moua argues he has an appeal of right under N.C. Gen. Stat § 15A-979(b) (2021), even though he did not notify the court and the prosecutor of his intent to appeal prior to his entry of a guilty plea. But on the chance that this Court concluded he did not have a statutory

right of appeal, Mr. Moua also submitted a petition for writ of *certiorari* to consider the merits of his claim. We granted *certiorari* review in our discretion under separate order.

After review of the record, we hold that the search was not consensual, and accordingly, we reverse the denial of the motion to suppress and vacate the judgment.

## I.    FACTS & PROCEDURAL HISTORY

At 12:59 a.m. on 5 December 2019, Sgt. Garrett Tryon and Officer J. Housa, with Charlotte-Mecklenburg County Police Department, initiated a traffic stop of Mr. Moua, for speeding on North Tryon Street near the Interstate 85 connector in Mecklenburg County. Sgt. Tryon stopped Mr. Moua, who was driving with a passenger, on a side street and told Mr. Moua that he had paced him at fifty miles per hour in a thirty-five mile per hour zone on North Tryon Street. Sgt. Tryon asked Mr. Moua for his license and registration, and he also asked the passenger to provide his license. Both Mr. Moua and his passenger cooperated and provided their identification; both Sgt. Tryon and Officer Housa were calm and professional in executing the stop, which was recorded on bodycam.

Sgt. Tryon went back to his vehicle and ran the information through different law enforcement databases while Officer Housa stood by the passenger door of Mr. Moua's car, shining his flashlight into the vehicle. After about two minutes of checking, Sgt. Tryon learned that Mr. Moua was on active probation and had prior charges; however, Mr. Moua did not have any active warrants. Sgt. Tryon then

returned to Mr. Moua's car and said, "Sir come out and talk to me real quick."  As he was speaking to Mr. Moua, Sgt. Tryon reached through the open window, unlocked and opened the door.

As soon as Mr. Moua walked to the back of the vehicle, Sgt. Tryon handed back Mr. Moua's license and registration.  Sgt. Tryon had the following conversation with Mr. Moua:

> SGT. TRYON: Come over here.  Here is your stuff back, man.  Um.  Look.  You gotta slow down.  35 is 35, right?  I get it, North Tryon used to be, like 55, like three years ago.  You've been living out here for a while?
>
> MR. MOUA: Yeah.
>
> SGT. TRYON: All right.  Um.  I see you got some charges in the past, you're on probation.
>
> MR. MOUA: Yeah.
>
> SGT. TRYON: You squared away?  You straight now?
>
> MR. MOUA: Yeah.
>
> SGT. TRYON: All right.  You been checking in?
>
> MR. MOUA: Oh yeah.
>
> SGT. TRYON: Are you unsupervised or –?
>
> MR. MOUA: Supervised.
>
> SGT. TRYON: Supervised.  Out of Mecklenburg County or –?
>
> MR. MOUA: Ah it's Cabarrus.
>
> SGT. TRYON: Cabarrus County.  Cool.  Hey, man, you have anything on you or in the car –

MR. MOUA: No.

SGT. TRYON: –that I should be worried about?

MR. MOUA: No.

SGT. TRYON: You wouldn't mind if I check, right?

MR. MOUA: Ya, go ahead.

SGT. TRYON: Mind if I pat you down really quick?

MR. MOUA: Ya.

Sgt. Tryon performed a pat down that did not uncover any contraband. After the pat down, Sgt. Tryon began to search the vehicle; meanwhile, Mr. Moua smoked a cigarette on the side of the road. Within fifteen seconds of initiating the search, Sgt. Tryon noticed a bag sticking out from under the driver's seat containing a white powdery substance. After discovering the bag, Sgt. Tryon walked over to Mr. Moua, placed him in handcuffs, and then continued to search the vehicle.

On 16 December 2019, Mr. Moua was indicted on one count each of trafficking methamphetamine (more than 200 but less than 400 grams) by transport, trafficking methamphetamine (more than 200 but less than 400 grams) by possession and keeping or maintaining a vehicle for keeping or selling methamphetamine. On 26 April 2021, the State filed superseding indictments on the two trafficking counts to lower the mass of methamphetamine to more than 28 but less than 200 grams.

Mr. Moua moved to suppress the evidence obtained during the search. The trial court heard this motion on 10 March 2022. During that hearing, Sgt. Tryon

testified that he typically asks people to get out of the vehicle either for officer safety or privacy reasons. He testified that in this case, he asked Mr. Moua to step out of the vehicle so that he could ask him about his probation away from the passenger. Additionally, Sgt. Tryon testified that in his experience, owner-operators are more likely to consent to a search of the vehicle when they are separated from their vehicle. During his testimony, Mr. Moua's counsel asked Sgt. Tryon about his reason for questioning Mr. Moua about his probation; Sgt. Tryon testified that it was "a conversation piece." Sgt. Tryon testified that, in his opinion, the purpose of the traffic stop concluded when he returned Mr. Moua's driver's license and registration.

After the motion to suppress hearing, the trial court issued an order denying the motion to suppress. In that order, the court made twenty-one findings of facts, including:

> 8. Upon re-approaching the [D]efendant, Sgt. Tryon requested the [D]efendant step out of the vehicle to speak with him, which the [D]efendant consented to doing. Sgt. Tryon said it was common practice for him and officers to ask occupants out of their vehicles during traffic stops for safety and privacy purposes.
>
> 10. Almost immediately upon the [D]efendant and Sgt. Tryon getting to the back of the [D]efendant's vehicle, Sgt. Tryon returned all of the documents back to the [D]efendant and the two briefly discussed the [D]efendant speeding and Sgt. Tryon gave him a warning for the speeding.
>
> 11. *After concluding the purpose for the stop*, Sgt. Tryon engaged in a consensual conversation with the [D]efendant about his probation and asked for consent to

search his car and person.

12. The [D]efendant freely and voluntarily gave consent for Sgt. Tryon to search his car and person.

The trial court also made twelve conclusions of law, including:

4. Almost immediately upon stepping out of the vehicle, Sgt. Tryon handed the [D]efendant his documents back and gave him a verbal warning for speeding.

5. At that point in time, this [c]ourt finds the reason for the traffic stop was concluded. The following conversation and actions after were a consensual encounter between Sgt. Tryon and the [D]efendant. A reasonable person in the [D]efendant[']s position would have felt free to leave or free to refuse to cooperate at that point and terminate the encounter.

12. In viewing the totality of the circumstances and the evidence before this [c]ourt . . .. Sgt. Tryon returned the [D]efendant[']s documents to him almost immediately and the traffic stop concluded once Sgt. Tryon handed the [D]efendant back all of his documents and gave him a verbal warning for speeding. The conversations and actions beyond that point were consensual in nature. Thereafter, the [D]efendant was no longer seized, the [D]efendant[']s Constitutional rights were not violated within the meaning of the Fourth Amendment, and the [D]efendant[']s consent to search his vehicle and person was freely and voluntarily [sic].

After the denial of his motion to suppress, Mr. Moua subsequently pleaded guilty as charged to all charges on 2 May 2022. Mr. Moua did not seek nor secure any agreement with the prosecutor to reduce or dismiss the charges. At the plea and sentencing hearing, the State submitted, as a factual basis for the plea, the gallon-sized Ziploc bag which Sgt. Tryon found under the seat containing 194.21 grams of

methamphetamine. The State indicated that after Sgt. Tryon completed the search of the car he read Mr. Moua his Miranda rights, and then Mr. Moua confessed that the methamphetamine in the vehicle was his; neither event appears on the video recording of the stop. Mr. Moua did not indicate his intent to appeal the motion to suppress prior to pleading guilty, and neither the colloquy nor the plea transcript asked Mr. Moua if he wished to reserve any rights to appeal or enter a conditional plea. However, Mr. Moua made an oral notice of appeal on the record during this sentencing hearing.

## II. ANALYSIS

Mr. Moua argues that he has the right to appeal the denial of the motion to suppress upon entry of his guilty plea according to N.C. Gen. Stat. § 15A-979(b) (2021). Generally, notice of intent to appeal is required to ensure the right to appeal under the statute; however, this Court held in *State v. Jonas*, that notice of intent to appeal is not required when a defendant does not negotiate a plea agreement and simply pleads guilty as charged. *State v. Jonas*, 280 N.C. App. 511, 516, 867 S.E.2d 563, 567 (2021), *review allowed, writ allowed*, 876 S.E.2d 272 (2022). The ruling in *Jonas* is currently stayed; therefore, Mr. Moua also filed a petition for writ of *certiorari*. In our discretion, we granted his petition for *writ of certiorari* under separate order.

On appeal, Mr. Moua argues that at the time he gave consent to search his car, he was unlawfully seized, and therefore, his consent was invalid. We agree.

## A. Appellate Jurisdiction

In North Carolina, a defendant's right to pursue an appeal from a criminal conviction is a creation of statute. *State v. McBride*, 120 N.C. App. 623, 624, 463 S.E.2d 403, 404 (1995). Generally, a defendant who pleads guilty does not have a statutory right of appeal. *See* N.C. Gen. Stat. § 15A-1444(e) (2021). However, the General Assembly has, by statute, allowed a defendant to appeal an adverse ruling in a pretrial suppression hearing despite the defendant's conviction based upon a guilty plea. *State v. Reynolds*, 298 N.C. 380, 395, 259 S.E.2d 843, 852 (1979). According to N.C. Gen. Stat. § 15A-979(b), an order denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment where the defendant pleads guilty. N.C. Gen. Stat. § 15A-979(b) (2021). This statutory right to appeal is conditional and not absolute. *State v. McBride*, 120 N.C. App. 623, 624, 463 S.E.2d 403, 404 (1995).

The North Carolina Supreme Court has held that when a defendant intends to appeal from a denial of a motion to suppress pursuant to N.C. Gen. Stat. § 15A-979(b), they must give notice of their intent to the prosecutor and the court *before plea negotiations are finalized*, or they will waive the appeal of right provisions of the statute. *State v. Reynolds*, 298 N.C. at 397, 259 S.E.2d at 853. The Court reasoned that the plea-bargaining table is not a "high stakes poker game;" it is much closer to arm's length bargaining. *Id.* Therefore, it would be inappropriate for defendants to keep their intent to appeal a secret during negotiation to get the benefit of the bargain

and then surprise the prosecution with an appeal of the conviction. *Id.*

In December 2021, this Court addressed the notice requirement in the context of a unilateral guilty plea given absent any bargaining with the State. This Court held that where a defendant does not plead guilty pursuant to a plea arrangement with the State, the defendant is not required to give notice of intent to appeal prior to the plea of guilty to invoke his statutory right to appeal. *State v. Jonas*, 280 N.C. App. 511, 516, 867 S.E.2d 563, 567 (2021). The Court reasoned that the concerns the Supreme Court was addressing in *Reynolds* are not present in a scenario where a defendant is not receiving any benefit of a plea agreement; the State has not been "trapped into agreeing to a plea bargain only to later have [d]efendant contest that bargain." *Id.* We agree with this analysis.

*Jonas,* however, was stayed by our Supreme Court on 21 December 2021. *State v. Jonas*, 380 N.C. 301, 865 S.E.2d 886 (2021). Whether the mandate in a stayed decision is binding precedent is unclear in North Carolina jurisprudence. Mr. Moua points to *Hunnicutt v. Griffin,* which says that a case becomes binding upon filing. *Hunnicutt v. Griffin,* 76 N.C. App. 259, 263, 332 S.E.2d 525, 527 (1985). Thus, *Hunnicutt* would suggest that the rule in *Jonas* confirms Mr. Moua's right of appeal. In contrast, the State argues that according to *State v. Gonzalez* a stayed case does not have precedential authority. 263 N.C. App. 527, 530, 823 S.E.2d 886, 888 (2019). In *State v. Gonzalez*, though, this Court addressed a conflict in precedent between several Court of Appeals decisions and declined to follow the stayed case because it

conflicted with prior precedent. *Id.*

Strictly speaking, *Jonas* does not conflict with the ruling in *Reynolds;* the latter did not address the type of unilateral guilty plea in the former. *Jonas* only clarifies the universe of scenarios in which the *Reynolds* notice requirement applies. Further, at the time of the plea and sentencing hearing in this case, the Supreme Court had not issued an opinion in *Jonas.*

The facts in this case are similar to *Jonas.* Mr. Moua did not negotiate any plea agreement with the State, and he did not receive any benefit from the State. The State argues that even when a defendant does not negotiate a plea with the State, a defendant is still required to provide notice of intent to appeal in addition to the notice of appeal. At oral argument, the State asserted that even without a plea agreement, Mr. Moua needed to give notice of *intent to appeal* as he was pleading guilty "prior to pronouncement of sentence" *in addition to* giving notice of appeal at the conclusion of the hearing to meet the requirements under *Reynolds.* We fail to see any meaningful value to the State in requiring a defendant, who is unilaterally pleading as charged, to provide notice of intent to appeal as he enters his plea in addition to providing notice of appeal only a few minutes later in the same hearing.

However, because *Jonas* has been stayed by the Supreme Court, we considered Mr. Moua's petition for writ of *certiorari* as an alternate and appropriate basis for our review. In light of the unsettled law in this area, and our ultimate holding, we

granted *certiorari* under separate order to consider the merits of his appeal.[1]

## B. Motion to Suppress

Mr. Moua argues that his consent to search the car was not voluntary because, at the time he gave consent, he was unlawfully seized under the Fourth Amendment. He challenges several findings of fact—which the trial court used to support the denial of the motion to suppress—as unsupported by competent evidence and argues that several findings of fact are in reality conclusions of law that this Court should review *de novo*.

After review, we agree that Mr. Moua was unlawfully seized when the police asked for consent to search his car. Based upon the totality of the circumstances, a reasonable person would not have felt free to terminate this encounter and a search of the car was not within the scope of the original stop. Therefore, his consent was not voluntary and the motion to suppress was erroneously denied. While we hold that the trial court had competent evidence upon which to base its findings of fact, the trial court comingled conclusions of law with findings of fact. Accordingly, we consider those conclusions of law *de novo*.

### 1. *Standard of Review*

This Court's review of a trial court's denial of a motion to suppress is strictly limited to determining whether the trial court's underlying findings of fact are

---

[1] Judge MURPHY dissented from this grant of *certiorari* in the order and would have found jurisdiction existed on the grounds described *supra*.

supported by competent evidence and whether those factual findings, in turn, support the ultimate conclusions of law. *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Where the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and binding on appeal. *State v. Roberson*, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735–36 (2004). The trial court's conclusions of law are reviewed *de novo*. *State v. Hernandez*, 170 N.C. App. 299, 304, 612 S.E.2d 420, 423 (2005).

When a trial court's findings comingle findings of facts with conclusions of law, we give appropriate deference to the findings of fact and review the portions of those findings that are conclusions of law *de novo*. *State v. Icard*, 363 N.C. 303, 308, 677 S.E.2d 822, 826 (2009). The North Carolina Supreme Court has defined findings of fact as statements of what happened in space and time. *State v. Parisi*, 372 N.C. 639, 655, 831 S.E.2d 236, 247 (2019). A conclusion of law, however, requires the exercise of judgment or the application of legal principles to the facts found. *State v. McFarland*, 234 N.C. App. 274, 284, 758 S.E.2d 457, 465 (2014) (internal quotes and citation omitted). Therefore, when statements identified as findings of fact required the trial court to exercise its judgment or apply law to come to a determination, those statements are considered as conclusions of law.

### 2. *Findings of Fact*

Mr. Moua specifically challenges the trial court's finding of fact 10 that Sgt. Tryon had given Mr. Moua a warning for speeding as unsupported by evidence. The

finding states that: "Almost immediately upon the [D]efendant and Sgt. Tryon getting to the back of the [D]efendant's vehicle, Sgt. Tryon returned all of the documents back to the [D]efendant and the two briefly discussed the [D]efendant speeding and Sgt. Tryon gave him a warning for speeding."

However, the competent evidence presented at the motion to suppress hearing supports this finding. The video footage of the incident, which was introduced as evidence during the motion to suppress hearing, shows that Sgt. Tryon said to Mr. Moua "You gotta slow down. 35 is 35, right? I get it, North Tryon used to be, like 55, like three years ago." The bodycam footage provided the trial court with competent evidence as to what Sgt. Tryon said and the statement plainly put Mr. Moua on notice to slow down and desist from going faster than the current speed limit on North Tryon Street. Accordingly, we hold that the trial court had competent evidence upon which to make the finding of fact that Sgt. Tryon gave Mr. Moua a warning. However, the key issue, which we discuss later, is whether this warning is sufficient, under the totality of the circumstance, to communicate to a reasonable person that the purpose of the stop had ended, and the person was free to terminate the encounter.

Additionally, Mr. Moua challenges finding of fact 13 that Mr. Moua "freely and voluntarily" consented to the search by arguing that the finding is actually a conclusion of law. The "question of whether consent to a search was in fact voluntary or was the product of duress or coercion, expressed or implied, is a question of fact to be determined based upon the totality of the circumstances." *State v. Hall*, 268 N.C.

App. 425, 429, 836 S.E.2d 670, 674 (2019) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 36 L.Ed.2d 854, 863 (1973)). Here, the competent evidence does not support the finding of fact that Mr. Moua "freely and voluntarily" consented to the search. Mr. Moua had just been separated from his vehicle through a show of force by Sgt. Tryon, where Sgt. Tryon had reached through the car window, unlocked and opened the car door. Sgt. Tryon was questioning Mr. Moua behind the car about his probation status with the State while his partner was shining his flashlight in the car. Sgt. Tryon presented the questions in a rapid-fire manner which quickly transitioned into a request to search the car. Based upon the totality of the circumstances, this finding of fact is not supported by competent evidence.

### 3. *Conclusions of Law*

Additionally, Mr. Moua argues that the trial court comingled findings of facts with conclusions of law. Specifically, Mr. Moua asserts that findings of fact 11 and 12—that the stop concluded prior to Sgt. Tryon's request to search and the request came during a "consensual" conversation—are actually conclusions of law. These items appear in the order as both findings of fact and conclusions of law. The ultimate conclusion of the trial court was that the purpose of the traffic stop ended when Sgt. Tryon returned Mr. Moua's documents, and the ensuing conversation were consensual; therefore, when Mr. Moua gave consent to search the car it was voluntary and consensual because a reasonable person would feel free to leave or refuse to cooperate. We review these conclusions *de novo*. *See State v. Reed*, 257 N.C. App.

524, 530, 810 S.E.2d 245, 249, *aff'd*, 373 N.C. 498, 838 S.E.2d 414 (2020) (explaining that while a traffic stop only concludes and becomes consensual after an officer returns the detainee's paperwork, the governing inquiry is whether under the totality of the circumstances, a reasonable person in the detainee's position would believe they are free to leave). *See also State v. Icard*, 363 N.C. at 308, 677 S.E.2d at 826 (stating that whether an officer's actions amount to a show of authority is a conclusion of law).

### 4. *Consent to search was not valid*

On appeal, Mr. Moua argues that when he gave consent to search his car, he was still "seized" within the meaning of the Fourth Amendment because the traffic stop was unlawfully extended. Therefore, his consent was invalid. We agree.

The Fourth Amendment to the U.S. Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . .." *United States v. Mendenhall*, 446 U.S. 544, 550, 64 L. Ed. 2d 497, 507 (1980). Similarly, the North Carolina Constitution, Article 1, Section 20 guarantees the right of people to be secure in their person and property and free from unreasonable search. *State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984).

When a party gives consent to a search while they are seized *or* when the bounds of an investigative stop have been exceeded, the consent is invalid. *Florida v. Royer*, 460 U.S. 491, 501, 75 L. Ed. 2d 229, 239 (1983) (emphasis added). Stopping

an automobile and detaining its occupants constitutes a "seizure" within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 59 L. Ed. 2d 660, 667 (1979). A traffic stop is permitted when an officer sees a motorist committing a violation or when the officer has a reasonably articulable suspicion that there is criminal activity afoot. *State v. Heien*, 226 N.C. App. 280, 286, 741 S.E.2d 1, 5 (2013). Generally, the allowable duration of police inquiry in the traffic-stop context is determined by the seizure's "mission"—e.g., to address the traffic violation that warranted the stop or to attend to related safety concerns.[2] *State v. Bullock*, 370 N.C. 256, 258, 805 S.E.2d 671, 673 (2017).

The return of documents would render further interaction voluntary and consensual only if a reasonable person under the circumstances would believe that they are free to leave or disregard the officer's request for information." *Id.* (quoting *State v. Kincaid*, 147 N.C. App. 94, 99, 555 S.E.2d 294, 299 (2001)). Once the purpose of the traffic stop has concluded, there is nothing that precludes a police officer from asking questions of a citizen; however, the interaction must be consensual and devoid of a show of authority or force on the part of law enforcement in order to avoid becoming a seizure within the scope of the Fourth Amendment. *United States v.*

---

[2] The State submitted a Memorandum of Authority presenting cases that justify the request for a motorist to exit the car during a traffic stop for safety concerns. The State did not advance that argument at the trial court level or in its appellate brief. The Rules of Appellate Procedure do not allow parties to add additional arguments through a Memorandum of Additional Authorities. N.C. R. App. P. 28(g) (2022). The scope of appeal is limited to issues presented in the briefs. N.C. R. App. P. 28(a).

*Mendenhall*, 446 U.S. at 552, 64 L. Ed. 2d at 508.

Here, it is undisputed that the initial traffic stop was lawful. However, the scope of detention for this traffic stop, "must be carefully tailored to its underlying justification." *State v. Morocco*, 99 N.C. App. 421, 427–28, 393 S.E.2d 545, 549 (1990) (quoting *Florida v. Royer*, 460 U.S. at 500, 75 L.Ed.2d at 238). Sgt. Tryon had the authority to stop Mr. Moua for speeding when he paced Mr. Moua driving fifty-five miles per hour in a thirty-five mile per hour zone. Beyond determining whether to issue a traffic ticket for the infraction, the reasonable duration of a traffic stop may include ordinary inquiries incident to the traffic stop including checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *State v. Bullock*, 370 N.C. at 257, 805 S.E.2d at 673 (2017) (citing *Rodriguez v. United States*, 575 U.S. 348, 355, 191 L. Ed. 2d 492, 499 (2015)). Sgt. Tryon completed all these tasks. He ran the driver's information through different law enforcement databases. After about two minutes of checking, Sgt. Tryon learned that Mr. Moua did not have any active warrants.

When Sgt. Tryon returned the documentation to Mr. Moua and gave him a verbal warning about speeding, the authority for the seizure ended. Sgt. Tryon needed reasonable articulable suspicion of a crime to extend the stop beyond that point and the State has not argued that reasonable articulable suspicion existed to extend the traffic stop. *See Rodriguez v. United States*, 575 U.S. at 354, 191 L. Ed.

2d at 498; *See also State v. Myles*, 188 N.C. App. 42, 45, 654 S.E.2d 752, 754 (holding that when the original purpose of the stop has been addressed, there must be grounds that provide a reasonable and articulable suspicion to justify further delay) *aff"d per curium*, 362 N.C. 344, 661 S.E.2d 732 (2008).

Therefore, to determine whether the encounter was unlawfully extended, as Mr. Moua argues or a voluntary encounter, as the State argues, we consider whether, based upon the totality of the circumstances, a reasonable person would have felt free to leave prior to the request to search. In a scenario where a reasonable person would feel free to leave, the encounter after the documents were returned would be a voluntary encounter, and the consent may be valid. *State v. Heien*, 226 N.C. App. 280, 287, 741 S.E.2d 1, 6 (2013). However, if the seizure was unlawfully prolonged, then consent was invalid. *Rodriguez v. United States*, 575 U.S. at 351, 191 L. Ed. 2d. at 496. Neither the subjective beliefs of law enforcement nor those of the defendant is dispositive of the question of whether a defendant is seized within the meaning of the Fourth Amendment; instead, the appropriate inquiry is whether a reasonable person would believe they are free to terminate the encounter. *State v. Freeman*, 307 N.C. 357, 360, 298 S.E.2d 331, 333 (1983).

The return of the documents is not a bright line that automatically and inarguably turns a seizure into a consensual encounter. We must consider the return of the document in the context of the entire encounter. Moments before the return of the documents, Sgt. Tryon had made a show of authority to remove Mr. Moua from

his vehicle and instructed him to stand behind the vehicle. The video shows that Sgt. Tryon did not phrase his direction as a question, instead directing, albeit politely: "Sir come out and talk to me real quick." Further, Sgt. Tryon reached into the car, unlocked, and opened the door, further suggesting that whether to exit the vehicle was not up to Mr. Moua. The second uniformed police officer was still standing by the passenger side of the car, shining his flashlight into the car. Sgt. Tryon did not tell Mr. Moua that the purpose for the traffic stop had concluded or even ask if he could question him about other topics. During the motion to suppress hearing, Sgt. Tryon testified that he removed Mr. Moua from his car, not for safety reasons but for privacy reasons and because people are more likely to consent to a search when they are separated from their vehicle.[3] No written citation or warning was issued, nor was there any indication from Sgt. Tryon that the traffic stop had ended. Sgt. Tryon immediately began questioning Mr. Moua about his probation status and whether he was compliant with the terms of his probation—questions directly implicating Mr. Moua's continued supervisory relationship with the State.

In the United States, the social contract that underpins our system of government is one premised on the fact that we cede the absolute nature of some of our individual rights in order to secure group safety and order. *See United States v.*

---

[3] Although this fact may be viewed as one reflective of the subjective intent of Sgt. Tryon, which we have identified as not part of the Fourth Amendment analysis, we think it provides context for how certain patterns and practices are employed in attempts to obtain consent that may impact how reasonable people perceive their ability to withhold consent.

*Brignoni-Ponce,* 422 U.S. 873, 878, 45 L. Ed. 2d 607, 615 (1975). That agreement creates an inherent power differential between law enforcement and citizens. Even if Sgt. Tryon intended to have a consensual conversation with Mr. Moua, we must objectively consider whether a reasonable person who is being questioned about their probation status on the side of a dark road in the middle of the night after being pulled out of their vehicle by a uniformed police officer would feel free to turn his back on the officer, walk back to their car, and drive away. After a review of the totality of this four-minute and forty-second encounter, we hold that a reasonable person in this situation would not have felt free to terminate the encounter even after the police officer returned his driver's license and registration four minutes and twelve seconds into the encounter. Therefore, the seizure was not rendered consensual by the return of the documents, the request to search was during an unlawful extension of the traffic stop, and Mr. Moua's consent to search was invalid.

In its brief, the State argues that the encounter between Sgt. Tryon and Mr. Moua was consensual based upon *United States v. Mendenhall,* 446 U.S. 544, 64 L. Ed. 2d 497 (1980). However, the facts in *Mendenhall* are distinguishable from the facts in this case. In *Mendenhall*, two plainclothes officers, who did not have any visible weapons, approached the defendant in the Detroit Metropolitan airport concourse during the morning. *Id.* at 555, 64 L. Ed. 2d at 510. The officers requested, not demanded, to see the defendant's identification. *Id.* The Court held that the officer's conduct *without more* was insufficient to find a constitutional infringement.

*Id.* By contrast, the instant case presents those facts that would convert *Mendenhall* into a constitutional infringement. Here, the uniformed police officers displayed, although they did not draw, weapons. The encounter occurred on a dark street, largely deserted, in the middle of the night. Further, in a show of authority, Sgt. Tryon reached into the window, unlocked and opened the car door, and told Defendant to get out of the car—essentially taking away any option for Mr. Moua to decline to follow Sgt. Tryon's instructions. Sgt. Tryon's conduct was sufficient to establish that a reasonable person would not feel free to terminate the encounter.

The State also points to *State v. Kincaid* and *State v. Heien* to support their contention that a reasonable person would have felt free to terminate this type of encounter. The State's argument is not persuasive. In *State v. Kincaid,* the police officer specifically told the defendant the reason for the stop had concluded, and the officer asked if he could question the defendant on another topic. *State v. Kincaid*, 147 N.C. App. at 100, 555 S.E.2d at 299. Here, Mr. Moua was not told that the reason for the stop had concluded, and Sgt. Tryon did not ask to question him on other topics. In *State v. Heien*, this Court held that a short encounter after the return of the license was consensual. 226 N.C. App. 280, 289, 741 S.E.2d 1, 6 (2013). However, the defendant in *Heien* was not the driver of the automobile, and the police officer told the driver that he was free to leave before asking the defendant, who was the passenger and owner of the vehicle, for consent to search the vehicle. *State v. Heien*, 214 N.C. App. 515, 516, 714 S.E.2d 827, 828 (2011) *rev'd*, 366 N.C. 271, 737 S.E.2d

351 (2012). Here, Sgt. Tryon never told Mr. Moua that he was free to leave. Thus, we find the facts here render *Heien* largely inapplicable.

As to the appropriate remedy, the State, for the first time at oral argument,[4] argued that even if this Court reversed the order denying the motion to dismiss, we should not vacate the judgment because it is based upon a guilty plea. However, the Legislature specifically created the right to appeal a denial of the motion to suppress from a guilty plea or a conviction, and the right does not exist until there is a guilty plea or conviction. N.C. Gen. Stat. § 15A-979(b). This Court only gains jurisdiction to consider the denial of the motion to suppress when the trial court entered a final judgment. *State v. Horton*, 264 N.C. App. 711, 714, 826 S.E.2d 770, 773 (2019). The plain language of the statute controls, and it explicitly provides relief after a guilty plea. Therefore, the appropriate remedy is to vacate the judgment and remand.

Based upon the totality of the circumstances, we hold that the seizure was unlawfully extended, and Mr. Moua was not engaged in a consensual conversation with law enforcement. A reasonable person would not have felt free to terminate this encounter, rendering Mr. Moua's consent invalid. Therefore, we hold that he was unlawfully seized under the Fourth Amendment, and the consent to search the vehicle was not freely and voluntarily given.

---

[4] As previously noted, the addition of new arguments not contained in the brief is a violation of the North Carolina Rules of Appellate procedure. It was improper for the State to raise this new argument at oral argument because it was not included in their brief.

## III.    CONCLUSION

Upon careful consideration of the issues presented, we hold that at the time the police officer asked for consent to search his car, Mr. Moua was unlawfully seized under the Fourth Amendment and did not, as a matter of law, freely and voluntarily give consent to the requested search.   Therefore, the search violated his Fourth Amendment rights.   Accordingly, we reverse the order denying the motion to suppress, vacate the judgment, and remand for further proceedings before the trial court.

REVERSED AND VACATED.

Judges MURPHY and ARROWOOD concur.